Maurice NEWTON

v.

UNITED STATES.

No. 391–55.

United States Court of Claims.
July 16, 1958.

Thomas N. Tarleau, New York City, for plaintiff. Sandow Holman, James R. Zuckerman, and Willkie, Farr, Gallagher, Walton & Fitz Gibbon, New York City, were on the briefs.

David R. Frazer, Washington, D. C., with whom was Asst. Atty. Gen., Charles K. Rice, for defendant. James P. Garland, Washington, D. C., was on the brief.

LARAMORE, Judge.

This is an action to recover income taxes and interest assessed thereon which have been paid by the plaintiff for the years 1945 and 1946. The sole issue presented is whether or not the plaintiff filed timely claims for refund as required by section 322(b) (1) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 322(b) (1). The facts necessary for an understanding and determination of the case are as follows:

In each of the years 1942 through 1950, plaintiff made a payment to his former wife, Alice L. Heath, in the amount of $11,000. These sums were paid pursuant to an agreement incident to divorce and will be referred to herein as "alimony payments." In filing his income tax returns for the years 1942 through 1950 plaintiff claimed as a deduction from gross income each of the $11,000 alimony payments made during those years. On January 15, 1948, following an audit of his 1944 return, plaintiff was advised by an internal revenue agent that a deficiency in his income tax was proposed. A part of this proposed deficiency resulted from the disallowance of the deduction plaintiff claimed for the alimony payment made in that year. Plaintiff's returns for 1942 and 1943 were also examined and the alimony payment questioned.

On February 19, 1948, plaintiff paid the 1944 deficiency with the intention of litigating the issue of the deductibility of the alimony payment for that year. On October 2, 1948, a complaint, Docket No. Civ. 47–681, Newton v. Pedrick, was filed against the Collector of Internal Revenue in the United States District Court, Southern District of New York, alleging the overpayment of tax resulting

from an erroneous disallowance of a deduction for an alimony payment.[1]

In the meantime plaintiff's 1945 return was the subject of an audit by an internal revenue agent which resulted in plaintiff being advised that a deficiency was proposed with respect to his tax for that year. This proposed deficiency was attributable in part to the disallowance of the alimony deduction claimed for 1945. Thereafter Mr. Brach, a tax accountant who represented plaintiff in regard to the audit, filed a letter with the internal revenue agent in charge dated December 30, 1948, which formally protested the proposed deficiency. This protest letter stated in part as follows:

"The taxpayer's deductions for similar alimony payments made to Alice L. Heath during 1943 and 1944, have been previously disallowed by the Bureau of Internal Revenue. Payment of the deficiency resulting from the disallowance for the year 1944 has been made by the taxpayer, a claim for refund of this payment has been duly filed, and the taxpayer has instituted suit against the Collector of Internal Revenue in the United States District Court, Southern District, for refund of the amount paid.

"Protest against the disallowance of the deduction for the year 1943 has been duly filed by the taxpayer. Final determination of the deductibility of the alimony paid by the taxpayer in 1943 is being deferred by the Bureau, pending the determination by the District Court of the deductibility of the alimony paid by the taxpayer in 1944.

"The facts in connection with this issue have been previously submitted to the Bureau as part of the claim for refund for 1944 and as part of the protest against your proposed deficiency for 1943. To the extent

deemed necessary these facts are incorporated herein by reference.

"It is respectfully requested that final determination of the deductibility of the alimony paid by the taxpayer in 1945 be deferred, pending the determination by the District Court of the deductibility of the alimony paid by the taxpayer in 1944."

In January 1949, after the District Court action had commenced, plaintiff's 1946 return was audited. The examining agent was informed by plaintiff's representative that the alimony issue was then involved in litigation for 1944, and that the result of that suit would govern all years in which the issue arose. Thereafter plaintiff was advised by a 30-day letter that a deficiency was proposed with regard to his 1946 return which was again attributable to the disallowance of an alimony payment as a deduction. Plaintiff sent a letter protesting the deficiency which stated substantially the same facts and request contained in his 1945 protest.

In connection with the protests filed for 1945 and 1946, Mr. Brach conferred with Mr. W. M. Shank, a conferee in the Internal Revenue Service. At Mr. Brach's request it was agreed that no action would be taken on the 1945 and 1946 deficiencies until the 1944 litigation had been terminated, and that the result for 1944 would settle the issue for 1945 and 1946 as well.

Sometime later the Internal Revenue Service requested Mr. Brach to have the plaintiff execute agreements extending the period of limitations for the assessment of the 1945 and 1946 deficiencies. Mr. Brach expressed concern over the possibility of the accumulation of interest and discussed this matter with Mr. Shank with the idea of finding a method to stop the running of interest without jeopardizing plaintiff's right to have the 1945 and 1946 deficiencies ultimately de-

1. Prior to instituting suit in the District Court plaintiff filed a claim for refund with the Commissioner of Internal Revenue for the year 1944. The claim was filed more than six months prior to the commencement of the suit and was denied by the Commissioner on October 19, 1948, while the suit was pending.

termined by the result in the 1944 litigation. Mr. Shank suggested that payment of the deficiencies would stop the running of interest and would not interfere with plaintiff's recovery of those amounts should he be successful in the District Court. Accordingly plaintiff then executed a waiver consenting to the immediate assessment of the deficiencies which were paid on April 14, 1950. The files of the Internal Revenue Service contain a memorandum entitled "Field Conferee's Memorandum" dated February 3, 1950, dealing with plaintiff's 1945 and 1946 tax liability. This memorandum states in part that:

> "In accordance with the request of the taxpayer contained in the protests, action by this office was held in abeyance pending the outcome of the taxpayer's suit in the U. S. District Court for the Southern District of New York on the same issue for the year 1944.
>
> "The taxpayer requested that the deficiencies as recommended in the revenue agents' reports be assessed for the purpose of saving the interest charges on such deficiencies in the event that the Government's position in the 1944 case is sustained. Agreement, Form 870, has been executed for the full amount of the deficiencies by the taxpayer."

Subsequent to plaintiff's payment on April 14, 1950, of the assessed 1945 and 1946 deficiencies there were no written communications between the plaintiff and the Internal Revenue Service during the next two years in regard to the 1945 and 1946 tax liability.

In mid-1950 and early 1951 plaintiff's 1947 and 1948 returns were audited and again the deductibility of the alimony payments was in issue. The revenue agent conducting the investigation was shown the protests for 1945 and 1946 and was asked to include in his report that the 1947 and 1948 deductions for alimony payments also hinged on the 1944 litigation. Notice to this effect was contained in the report of the revenue agent and the plaintiff filed an agreement consenting to immediate assessment and paid the tax for those years. The same situation arose for the tax years 1949 and 1950 and the deficiency was again paid. For the years 1947 through 1950 the plaintiff filed timely formal claims for refund with respect to the tax paid on account of the disallowance of a deduction for alimony payments.

On March 25, 1953, the District Court action was dismissed on its merits pursuant to an opinion filed March 12, 1953, 115 F.Supp. 368. Appeal was taken to the United States Court of Appeals for the Second Circuit which resulted in reversal of the District Court in an opinion by Circuit Judge Harlan decided April 28, 1954, 212 F.2d 357. On May 28, 1954, the District Court pursuant to the mandate of the Court of Appeals entered judgment against the defendant for the amount of the tax collected attributable to the disallowed deduction for the 1944 alimony payment together with interest and costs.

Shortly after the decision of the Court of Appeals, the District Director of Internal Revenue for the Lower Manhattan District was requested to implement the decision by refunding the overpayments attributable to the disallowance of the alimony deduction for each of the years 1943 through 1950. It was explained that formal claims for refund had not been made for 1945 and 1946 but that all agents concerned had been advised of the plaintiff's position. The District Director advised the plaintiff to file claims for refund on Form 843[2] for 1945 and 1946 in order to formalize his claims for those years and to write a letter outlining the situation. The requested letter was mailed May 19, 1954, and on May 21, 1954, plaintiff filed formal claims for re-

2. Treas.Reg. 118, Sec. 39.322–3 requires that claims for refund be made on specified forms or by way of an amended return for each of the taxable years involved. It also requires that the claim be filed within the statutory period. [Section 322(b) (1) of the 1939 Code.]

fund on Form 843 for each of the two years here involved. The claims were disallowed by the Commissioner of Internal Revenue on June 16, 1955, on the ground that the claims were not timely filed. In all other years in which the alimony payments were disallowed as a deduction, and for which formal claims for refund had been made within the specified period of time, a refund of the tax attributable thereto was made.

For the purposes of this suit the defendant is not contesting the issue of whether the plaintiff was entitled to deduct the alimony payments in 1945 and 1946. In this connection we need only say that even had the defendant sought to raise this issue we would be bound under the doctrine of collateral estoppel to abide by the opinion of the Second Circuit, Southern Maryland Agricultural Ass'n v. United States, 147 F.Supp. 276, 137 Ct.Cl. 176; Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898. It therefore remains only to determine whether the plaintiff is barred from recovery because of his failure to file formal claims for refund within the time required by section 322 (b) (1) of the Internal Revenue Code of 1939. Section 322(b) (1) provides in pertinent part:

> "Unless a claim for credit or refund is filed by the taxpayer within three years from the time the return was filed by the taxpayer or within two years from the time the tax was paid, no credit or refund shall be allowed or made after the expiration of whichever of such periods expires the later."

It is undisputed that no formal claims for refund for 1945 and 1946 were filed within three years of plaintiff's filing his tax return or within two years from the time that he paid the tax. It is, however, the plaintiff's contention that the facts and circumstances in this case are sufficient to constitute informal claims for refund which were timely presented and subsequently perfected by formal claims on the prescribed forms.

■ It has long been recognized that the failure to meet the formal requirements in regard to claims for refund is not necessarily destructive of a taxpayer's right to such refund where the Commissioner was not misled or deceived by the failure to file a formal claim, Bonwit Teller & Co. v. United States, 283 U.S. 258, 51 S.Ct. 395, 75 L.Ed. 1018; Night Hawk Leasing Co. v. United States, 18 F.Supp. 938, 84 Ct.Cl. 596. The purpose of a claim for refund is to put the Commissioner on notice that a right is being asserted with respect to an overpayment of tax, National Forge & Ordnance Co. v. United States, Ct.Cl., 151 F.Supp. 937, on defendant's motion for reconsideration. This notice must be given within the time required by the statutory limitation period or else the claim is barred. Such a rule prevents the assertion of stale claims which would be difficult or impossible to determine on their merits due to the passage of time. However, where the Commissioner has had notice from the very beginning of the taxpayer's claim to a refund of tax predicated on specific facts the very purpose of a limitations period has been served, United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L. Ed. 619, citing New York Central & H. R. R. Co. v. Kinney, 260 U.S. 340, 43 S. Ct. 122, 67 L.Ed. 294.

In United States v. Kales, 314 U.S. 186, 62 S.Ct. 214, 86 L.Ed. 132, the taxpayer failed within the period of limitations to file a formal claim for refund, but within such time did file a written protest against the exaction of the tax. After the running of the period of limitations, taxpayer filed a formal claim which she stated to be an amendment to her claim for refund contained in the protest letter. In allowing the taxpayer to recover the Supreme Court held that a claim which does not comply with formal requirements, but is notice fairly advising the Commissioner of the nature of the taxpayer's claim, may have its formal defects remedied by amendment *after* the lapse of the statutory period. This case has been followed or discussed in:

Cumberland Portland Cement Co. v. United States, 104 F.Supp. 1010, 122 Ct. Cl. 580; Stuart v. United States, 130 F. Supp. 386, 131 Ct.Cl. 174; Crenshaw v. Hrcka, 4 Cir., 237 F.2d 372, affirming, D.C., 140 F.Supp. 350; Nelson v. Harrison, 7 Cir., 131 F.2d 205; Evans v. Kavanagh, D.C., 86 F.Supp. 535, affirmed on other grounds, 6 Cir., 188 F.2d 234; and Milbank v. Duggan, D.C., 54 F.Supp. 555.

Defendant recognizes that sanction has been given by our highest court to in-, formal claims for refund but it says that three guiding principles emerge from the cases which are in effect conditions precedent to recovery. They are: (1) that the original or amended claim must have been considered on its merits; (2) that the original informal claim must have been positively identified as a claim for refund; and (3) that the taxpayer was informed that his original or amended claim was being considered on the merits.

■ We are unable to agree that these so-called principles necessarily present a true rationale of what constitutes a valid informal claim for refund. The basic underlying principle is the necessity to put the Commissioner on notice of what the taxpayer is claiming and that he is in fact making a claim for refund. No hard and fast rules can be applied because it is a combination of facts and circumstances which must ultimately determine whether or not an informal claim constituting notice to the Commissioner has been made. Necessarily each case must be decided on its own peculiar set of facts with a view towards determining whether under those facts the Commissioner knew, or should have known, that a claim was being made. We believe that this is the predicate of an informal claim and is clearly borne out by the cases above cited.

■ We then come to the question of whether or not this plaintiff has made out a case of an informal claim for refund. We are of opinion that he has done so. For both the years 1945 and 1946 plaintiff filed written protests prior to paying the tax. The protests set forth the fact that pending litigation involving his 1944 return would dispose of the 1945 and 1946 alimony deduction issue. It was agreed by agents of the internal revenue that proceedings with respect to 1945 and 1946 would be held in abeyance pending the outcome of the 1944 suit. A conference was later held in which it was suggested by a representative of the Commissioner that plaintiff pay the tax to stop the possible accumulation of interest and that such action would not interfere with plaintiff's recovery of those amounts in the event he won in the District Court. A memo to this effect was put on file with the Internal Revenue Service. Considering these facts alone, and the circumstances under which they arose, there is absolutely no doubt in our minds, and there should have been none in the Commissioner's, that plaintiff was claiming a refund of tax in the event the litigation was settled in his favor. The fact that plaintiff's claim was in the nature of an assertion of a right contingent upon an event happening in the future does not alter the result. See United States v. Kales, supra [314 U.S. 186, 62 S.Ct. 219], where it was said that "[s]uch a use of the future tense in stating a claim may, with due regard to the circumstances of making it, rightly be taken as an assertion of a present right. See Georgia, Florida & Alabama Ry. Co. v. Blish Milling Co., 241 U.S. 190, 197, 198, 36 S.Ct. 541, 544, 60 L.Ed. 948; cf. George Moore Ice Cream Co. v. Rose, supra, 289 U.S. [373] at page 384, 53 S.Ct. [620] at page 624, 77 L.Ed. 1265, reversing, 5 Cir., 61 F.2d 605." See also this court's decision in Night Hawk Leasing Co. v. United States, supra.

When plaintiff filed Form 843 after the decision in the Second Circuit. he was only perfecting a right which he had previously informally claimed. It made no difference that the informal claim was made prior to the time that the tax was actually paid since the Commissioner knew or should have known that the plaintiff was claiming a refund, Crenshaw v. Hrcka, supra. Since we are of

the opinion that plaintiff met the requirements of section 322(b) (1) when he made timely informal claims for refund, which claims were later perfected by formal claims, it necessarily follows that he is entitled to recover the tax and interest collected for 1945 and 1946 which was attributable to the disallowance of the alimony deduction.

Judgment will be entered for the plaintiff together with interest as provided by law. The amount of recovery will be determined pursuant to rule 38(c) of the Rules of this court, 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.

Whitaker, J., dissented.