**Patrick J. DONAHUE, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 92–818T.**

United States Court of Federal Claims.

June 29, 1995.

John K. Antholis, Morristown, NJ, for plaintiff.

Jennifer Dover Spriggs and William K. Drew, with whom were Asst. Atty. Gen. Loretta C. Argrett and Mildred L. Seidman, Chief, Washington, DC, for defendant.

## OPINION

ANDEWELT, Judge.

In this tax refund action, plaintiff, Patrick J. Donahue, seeks a refund of $4,961 plus penalties and interest paid by plaintiff as a result of an audit by the Internal Revenue Service (IRS) covering tax year 1985. This action is presently before the court on defendant's motion for summary judgment. For the reasons set forth below, defendant's motion is granted.

## I.

The material facts are not in dispute. On February 20, 1986, plaintiff filed his 1985 Individual Income Tax Return, Form 1040, requesting a refund of $3,576. The IRS sent plaintiff a check for the full $3,576 refund on April 4, 1986. In 1988, however, the IRS initiated an audit of plaintiff's 1985 tax return. In a March 25, 1988, letter, the IRS requested that plaintiff submit information to support certain expenses and deductions plaintiff had claimed for 1985. In a June 17, 1988, letter, the IRS advised plaintiff that it had not received any response to its previous letter and that it believed certain adjustments should be made in the amount of plaintiff's income tax. Finally, on July 27, 1988, the IRS sent plaintiff a formal Notice of Deficiency for tax year 1985 in the amount of $4,961. After plaintiff failed to make any voluntary payments within the 90–day period provided in the Notice of Deficiency, the IRS issued assessments against plaintiff's account for the 1985 taxes due plus accumulated penalties and interest. On July 31, 1989, after plaintiff filed his 1988 tax return seeking a refund of $7,774, the IRS transferred credits totalling $7,745.51 from plaintiff's 1988 tax overpayment to his outstanding 1985 tax, interest, and penalty liability. On that same day, the IRS issued a refund check to plaintiff for tax year 1988 in the amount of $38.51. The IRS issued no other refund checks to plaintiff for the 1988 tax year.

On August 17, 1991, plaintiff filed an Amended Individual Income Tax Return, Form 1040x, seeking a refund of $4,961 for tax year 1985. On October 4, 1991, the IRS formally rejected plaintiff's Form 1040x on the ground that plaintiff filed the amended return beyond the applicable statutory time periods set forth in I.R.C. § 6511(a). Section 6511(a) provides that any "[c]laim for credit or refund of an overpayment of any tax ... shall be filed by the taxpayer [with the IRS] within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later...." Plaintiff submitted his amended 1985 tax return on August 17, 1991, clearly more than three years from the February 20, 1986, date upon which plaintiff filed his original 1985 tax return. As to the alternative two-year statutory period in Section 6511(a), the IRS took the position that July 31, 1989, the date upon which the IRS credited plaintiff's 1988 tax overpayment toward his 1985 tax obligations, was "the time the [1985] tax was paid." Because plaintiff did not submit his amended 1985 tax return until August 17, 1991, more than two years after the July 31, 1989, credit, the IRS concluded that plaintiff filed his amended return beyond the two-year statutory period allowed in Section 6511(a).

In response to the IRS's denial of plaintiff's amended claim, plaintiff filed the instant suit. Plaintiff's complaint consists of four counts. Count I seeks a refund of $3,576 on the ground that plaintiff never received the $3,576 refund requested in his original 1985 tax return. Counts II, III, and IV seek recovery, under different theories, of the credit applied from plaintiff's 1988 tax overpayment toward his 1985 tax liability. I.R.C. § 7422(a) requires as a prerequisite for a tax refund suit in this court a "duly filed" claim for refund with the IRS.[1] Counts II and IV present alternative arguments as to why plaintiff's amended 1985 tax return should be considered "duly filed" within the alternative two-year statutory period set forth in Section 6511(a). Count III, as amplified at oral argument, alleges that even if plaintiff filed his amended 1985 tax return outside the statutory period, a series of correspondence from plaintiff to the IRS within the statutory period qualifies as a timely informal claim for refund sufficient to satisfy the requirements for a tax refund suit in this court under Sections 6511(a) and 7422(a). Defendant re-

---

1. Section 7422(a) provides:

 (a) **No suit prior to filing claim for refund.**—No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

sponded to plaintiff's allegations with the instant motion for summary judgment.

## II.

In Count I of the complaint, plaintiff alleges that he never received the $3,576 refund requested in his original 1985 tax return. To support its motion for summary judgment on Count I, defendant presents IRS records and affidavits from IRS employees as evidence that the IRS did issue, and plaintiff did receive, a 1985 refund check for $3,576. Summary judgment is appropriate "if there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." RCFC 56(c). In *Solar Turbines, Inc. v. United States*, 23 Cl.Ct. 142, 146 (1991), this court described the respective obligations of the parties on summary judgment as follows:

> Under summary judgment procedures, the moving party has the burden of establishing the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 [90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142] (1970); *see Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). The moving party can initially discharge this burden by demonstrating an absence of evidence to support the nonmoving party's case, *i.e.*, the absence of evidence as to an essential element of the cause of action on which the nonmovant bears the burden of proof. *Celotex [Corp. v. Catrett]*, 477 U.S. [317,] 322–25 [106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265] [(1986)]. When the moving party successfully discharges its initial burden in this way, the nonmovant cannot defeat summary judgment merely by alleging a dispute as to a material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 [106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202] (1986). Rather, the nonmovant must present sufficient evidence as to the existence of that fact so that the trier of fact could reasonably find in the nonmoving party's favor as to that fact. *Id.* "The non-movant may not rest on its conclusory pleadings but, under Rule 56, must set out, usually in an affidavit by one with knowledge of specific facts, what specific evidence could be offered at trial." *Sweats*

*Fashions[, Inc. v. Pannill Knitting Co.]*, 833 F.2d [1560,] 1562–63 [(Fed.Cir.1987)] (quoting *Pure Gold, Inc. v. Syntex (U.S.A.), Inc.*, 739 F.2d 624, 626–27 (Fed. Cir.1984)).

The sworn statements of IRS employees provided by defendant support the conclusion that the IRS issued plaintiff a check for $3,576 on April 4, 1986, and that plaintiff subsequently cashed that check. These affidavits are sufficient to satisfy defendant's initial burden to demonstrate the absence of any dispute that plaintiff received the $3,576 refund. Consequently, as explained above, the burden shifts to plaintiff to present sufficient evidence to permit the court to find that plaintiff did not receive the $3,576 refund.

Plaintiff has failed to satisfy this burden. RCFC 56(f) provides that when a party moves for summary judgment with supporting affidavits, "an adverse party may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided ... must set forth specific facts showing that there is a genuine issue for trial." Plaintiff has not provided any documents or sworn testimony to support the contention that plaintiff never received the 1985 refund check. Indeed, in his statement of genuine issues submitted pursuant to RCFC 56(d)(2), plaintiff failed to dispute numbered paragraph four of defendant's proposed findings of uncontroverted fact which alleges that plaintiff cashed the $3,576 refund check issued on April 4, 1986. RCFC 56(d)(3) instructs the court to "deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are included in the Statement of Genuine Issues and are controverted by affidavit or other written or oral evidence." Because plaintiff did not submit evidence to support his contention that he did not receive the $3,576 refund check, defendant's motion for summary judgment on Count I must be granted. At oral argument, plaintiff conceded the deficiency in his response with respect to Count I.

## III.

In Count II of the complaint, plaintiff alleges that July 31, 1989, the date upon

which the IRS credited plaintiff's 1988 tax overpayment toward plaintiff's 1985 tax deficiency, is not "the time the [1985] tax was paid" for purposes of applying the statute of limitations in Section 6511(a). Plaintiff argues that the IRS could not properly credit plaintiff's 1988 tax overpayment to his 1985 tax deficiency until February 23, 1991, the date upon which the IRS completed its audit and formally accepted plaintiff's 1988 tax return. According to plaintiff, the IRS could not have transferred any portion of plaintiff's reported 1988 overpayment to plaintiff's 1985 tax deficiency until the IRS formally accepted the 1988 tax return, because until it completed its audit, the IRS could not have known whether plaintiff had truly overpaid his 1988 taxes and, if so, by how much. If plaintiff is correct, then February 23, 1991, serves as "the time the [1985] tax was paid" for the purposes of Section 6511(a), and plaintiff's amended 1985 tax return, received by the IRS on August 17, 1991, satisfies the two-year requirement of Section 6511(a).

Plaintiff's argument, however, does not accurately portray the facts of this case and is inconsistent with the controlling regulations. The IRS credited plaintiff's 1988 overpayment against plaintiff's outstanding 1985 deficiency on July 31, 1989, one month after plaintiff filed his 1988 tax return. The IRS did not initiate its audit of plaintiff's 1988 return until December 12, 1990, almost a year and a half after the IRS applied the credit. Therefore, contrary to the sequence of events suggested by plaintiff, the IRS was not in the middle of an audit or uncertain about the validity of plaintiff's 1988 refund request when it applied the credit to plaintiff's 1985 tax deficiency.

In any event, the IRS has the authority under I.R.C. § 6402(a) and applicable regulations to credit tax overpayments against tax deficiencies for prior tax years as it did on July 31, 1989. Section 6402(a) provides:

In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of

an internal revenue tax on the part of the person who made the overpayment. . . .

Moreover, Treas.Reg. § 301.6402–4 specifically authorizes the IRS to credit such a reported tax overpayment against other tax obligations prior to the IRS completing an audit of the tax return that reports the tax overpayment. Treas.Reg. § 301.6402–4 provides:

In any case in which the district director or the director of the regional service center determines that the payments by the taxpayer . . . are in excess of the amount of tax shown on the return, he may make credit or refund of such overpayment without awaiting examination of the completed return and without awaiting filing of a claim for refund.

This regulation authorizes the action taken by the IRS in the instant case, and plaintiff has not presented any convincing argument that this IRS regulation is not a reasonable interpretation of the underlying statute. Because plaintiff satisfied his 1985 tax deficiency on the date the IRS credited plaintiff's reported 1988 tax overpayment against his 1985 deficiency, "the time the [1985] tax was paid" for the purposes of Section 6511(a) is the date of the credit, July 31, 1989.

## IV.

Count IV of plaintiff's complaint rests on the alternative theory that the court should not consider the July 31, 1989, date of credit as "the time the [1985] tax was paid" under Section 6511(a) because the IRS did not formally notify plaintiff on that date that it was using plaintiff's 1988 overpayment as a credit. Plaintiff's theory has two prongs, one statutory in nature and the other equitable.

### A.

Plaintiff's statutory argument is based on I.R.C. § 6402(d), which provides:

(d) **Collection of debts owed to Federal Agencies.—**

(1) **In general.**—Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt . . . the Secretary shall—

(A) reduce the amount of any overpayment payable to such person by the amount of such debt;

(B) pay the amount by which such overpayment is reduced under subparagraph (A) to such agency; and

(C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

Plaintiff contends that the IRS's act of crediting plaintiff's 1988 tax overpayment toward plaintiff's 1985 tax deficiency is covered by Section 6402(d)(1)(C) which requires the IRS to notify the taxpayer when the IRS uses a tax overpayment to pay a debt owed to a federal agency. Plaintiff argues that because the IRS did not formally notify plaintiff until May 30, 1991, that it used his 1988 tax overpayment to offset his 1985 tax deficiency, the May 30, 1991, date of notification should be used as "the time the [1985] tax was paid" for purposes of applying Section 6511(a). This argument, however, focuses on the wrong subsection in Section 6402.

■ Section 6402 covers the different types of deficiencies against which tax overpayments may be credited. Section 6402(a) governs the credit of tax overpayments against federal income tax liabilities; Section 6402(c) covers the credit of tax overpayments against certain support payments owed by the taxpayer under the Social Security Act; and Section 6402(d) describes the credit of tax overpayments against a debt owed by the taxpayer to a federal agency. In the instant case, the IRS credited plaintiff's tax overpayment against a federal income tax liability. Therefore, the IRS's actions must be evaluated under Section 6402(a) which, as set forth above, provides that "the Secretary ... may credit the amount of ... overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue

tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any balance to such person." Because Section 6402(a), unlike Section 6402(d), does not contain a notification requirement, the IRS was not under any statutory obligation to notify plaintiff that it used his 1988 tax overpayment to offset his 1985 tax liability.

■ Both the reference in Section 6402(a) to Section 6402(d) and the wording of Section 6402(d) reaffirm this interpretation that prior year income tax deficiencies are not "debts owed to Federal Agencies" under Section 6402(d). Section 6402 anticipates a three-tier priority system for using a taxpayer's overpayment to pay other tax debts. The IRS first credits the tax overpayment against any outstanding federal income tax liability, then credits any remaining overpayment against obligations under Section 6402(c) followed by obligations under Section 6402(d), and finally returns any remaining overpayment "balance" to the taxpayer. This system treats IRS tax liabilities under Section 6402(a) as distinct from debts owed to federal agencies under Section 6402(d). Treas.Reg. § 301.6402-6(g)(1) explains the priority scheme created in Section 6402, as follows:

(g) *Priorities for offset.* (1) An overpayment shall be reduced first by the amount of an outstanding liability for any tax under section 6402(a); second, by the amount of any past-due support assigned to a State under section 402(a)(26) or section 471(a)(17) of the Social Security Act which is to be offset under section 6402(c) and the regulations thereunder; [and] third, by the amount of any past-due, legally enforceable debt owed to a Federal agency under section 6402(d)....[2]

---

**2.** The legislative history of Section 6402(d) reaffirms the interpretation that federal income tax liabilities are not meant to be included in the category of debts owed to federal agencies covered under Section 6402(d). Congress enacted Section 6402(d) in 1984 as an addition to the existing statute which included Section 6402(a). The purpose of this addition was to grant the IRS a power it did not previously have—the power "to offset tax refunds against *nontax* debts owed

to Federal agencies." H.R.Conf.Rep. No. 861, 98th Cong., 2d Sess. 757, 1413 (1984), *reprinted in* 1984 U.S.C.C.A.N. 697, 1445, 2101 (emphasis added). Thus, income tax deficiencies are covered under Section 6402(a), not Section 6402(d), and the explicit requirement of notification in Section 6402(d) does not apply when the IRS credits a tax overpayment against an outstanding federal income tax liability.

■ To interpret the Tax Code as not obliging the IRS to notify a taxpayer when the IRS credits an overpayment against a prior tax year liability would not leave a taxpayer in the dark while the two-year statutory period in Section 6511(a) runs. A formal Notice of Deficiency and periodic assessments serve to place the taxpayer on notice that the IRS considers the taxpayer in arrears as to his or her income tax liability. *See Close v. United States*, 218 Ct.Cl. 744 (1978) (a Notice of Deficiency covering an earlier year's tax liability is a prerequisite for using a later year's overpayment as a credit toward that deficiency). Having received such notice, if the taxpayer later requests a refund of an overpayment for a subsequent tax year and the IRS does not provide the refund, the taxpayer reasonably should suspect that the IRS may have credited the overpayment against the taxpayer's pre-existing tax obligation, or at the very least, the taxpayer reasonably should be expected to inquire as to the reason why the IRS did not send the requested refund.[3]

### B.

■ As an alternative to his statutory interpretation argument, plaintiff alleges that the IRS should be estopped from contending that July 31, 1989, qualifies as "the time the [1985] tax was paid" for the purpose of the limitations period in Section 6511(a). Plaintiff's estoppel argument echoes the notice aspect of his statutory argument, but the estoppel argument is rooted in equitable principles rather than statutory interpretation. Plaintiff contends that the IRS did not inform plaintiff of the precise date upon which it credited his 1988 tax overpayment against his 1985 tax deficiency until after the two-year limitation period had already expired. The general requirements for equitable estoppel are as follows:

(1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Emeco Industries, Inc. v. United States*, 202 Ct.Cl. 1006, 1015, 485 F.2d 652, 657 (1973) (quoting *United States v. Georgia–Pacific Co.*, 421 F.2d 92, 96 (9th Cir.1970)). In *Heckler v. Community Health Services*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984), however, the Supreme Court explained that "the Government may not be estopped on the same terms as any other litigant." In order to assert equitable estoppel against the United States, plaintiff must demonstrate some affirmative misconduct by the government. *Hanson v. Office of Personnel Management*, 833 F.2d 1568, 1569 (Fed.Cir.1987) ("It is now settled that to estop the Government there must at least be affirmative misconduct, leading to unfairness, on the part of a Government official."); *see also Henry v. United States*, 870 F.2d 634, 637 (Fed.Cir.1989).

■ Plaintiff has failed to present any evidence of conduct that could be construed as affirmative misconduct on the part of the United States. Plaintiff charges the IRS only with an act of omission—the failure to provide plaintiff with a notification which, for the reasons set forth above, the IRS had no statutory obligation to provide. Moreover, plaintiff has not presented any evidence to suggest that the IRS intended, by failing to provide notification, to discourage plaintiff from filing a timely refund claim. Indeed, even in the absence of a specific notification, the IRS reasonably could conclude that plaintiff was aware that his 1988 tax overpayment had been credited against his 1985 tax liability. As described above, after a series of correspondence explaining plaintiff's outstanding 1985 tax liability, the IRS sent plaintiff a refund check for only $38.51 in

---

**3.** Defendant indicated at oral argument that the IRS ordinarily provides a formal notice to a taxpayer when the IRS uses an overpayment to offset a prior income tax liability, but that the IRS lacks proof that it provided such notice here. This policy of uniformly providing such formal notice would seem appropriate in that it should eliminate any possible ambiguity as to the IRS's actions. This court, however, has not been asked to assess the wisdom of the IRS's alleged failure to provide formal notification herein, but rather only whether the applicable statutes and regulations require such notification.

response to plaintiff's 1988 tax refund request seeking $7,774. The IRS reasonably could assume that when plaintiff received a refund check for $38.51 in response to a request for $7,774, plaintiff suspected that the IRS had deducted plaintiff's outstanding 1985 tax liability from plaintiff's 1988 tax refund request.

In any event, even if the check for $38.51 did not cause plaintiff to recognize that the IRS had credited the remainder of plaintiff's 1988 refund amount toward his 1985 tax liability, plaintiff did receive a subsequent notice of the credit. On May 30, 1991, with two months remaining under Section 6511(a) to file a claim for refund, the IRS responded to a letter from plaintiff and stated that a credit of a portion of his 1988 tax overpayment had occurred. At that point, plaintiff reasonably should have understood that the credit had occurred at the time the IRS sent plaintiff's 1988 tax refund check for only $38.51. Plaintiff still had two months after the IRS's May 30, 1991, letter to file a timely refund claim. Yet, instead of immediately filing a claim for refund to protect himself, plaintiff sent a letter to the IRS requesting further information.

In sum, on the undisputed facts of this case, equitable estoppel does not lie. Therefore, defendant's motion for summary judgment on Count IV is granted.

## V.

In Count III of his complaint, plaintiff alleges that even if he filed his amended 1985 tax return outside the statutory period set forth in Section 6511(a), a series of correspondence from plaintiff to the IRS within the statutory period qualifies as a timely refund claim sufficient to support a tax refund suit in this court. Treas.Reg. § 301.6402-2(a) sets forth the following requirements for a claim for credit or refund:

The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply

with this paragraph will not be considered for any purpose as a claim for refund or credit.

■ As the law has evolved, a taxpayer is not required to submit a formal written claim, such as an amended income tax return, within the statutory time period set forth in Section 6511(a). Rather, courts have held that under certain circumstances, it is sufficient that the taxpayer submit a so called "informal claim" within the statutory period, and then, outside of the limitation period, submit a formal claim. In *United States v. Kales*, 314 U.S. 186, 194, 62 S.Ct. 214, 218, 86 L.Ed. 132 (1941), the Supreme Court explained the doctrine of informal claims as follows:

This Court, applying the statute and regulations, has often held that a notice fairly advising the Commissioner of the nature of the taxpayer's claim, which the Commissioner could reject because too general or because it does not comply with formal requirements of the statute and regulations, will nevertheless be treated as a claim, where formal defects and lack of specificity have been remedied by amendment filed after the lapse of the statutory period.

■ The determination of whether a taxpayer has satisfied the requirements for an informal claim is made on a case-by-case basis and is based on the totality of the facts. *American Radiator & Standard Sanitary Corp. v. United States*, 162 Ct.Cl. 106, 114, 318 F.2d 915, 920 (1963); *Newton v. United States*, 163 F.Supp. 614, 143 Ct.Cl. 293, 300 (1958). In *Newton*, 143 Ct.Cl. at 300, the court explained that "[t]he basic underlying principle [of an informal claim] is the necessity to put the [IRS] on notice of what the taxpayer is claiming and that he is in fact making a claim for a refund." In *American Radiator*, 162 Ct.Cl. at 113–14, 318 F.2d at 920, the court maintained this focus on the adequacy of the notice to the IRS, as follows:

Informal refund claims have long been held valid. But they must have a written component, and should adequately apprise the [IRS] that a refund is sought and for certain years. It is not enough that the

[IRS] have in its possession information from which it might deduce that the taxpayer is entitled to, or might desire, a refund; nor is it sufficient that a claim involving the same ground has been filed for another year or by a different taxpayer. On the other hand, the writing should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component. In addition to the writing and some form of request for a refund, the only essential is that there be made available sufficient information as to the tax and the year to enable the [IRS] to commence, if it wishes, an examination into the claim.

(Citations omitted.)

 The requirement that a taxpayer must provide the IRS with adequate notice within the statutory period that he or she is seeking a tax refund is dictated by the policies underlying Section 6511(a). The statute of limitations in Section 6511(a) is designed to protect the IRS against "the assertion of stale claims which would be difficult or impossible to determine on their merits due to the passage of time." *Newton*, 143 Ct.Cl. at 299. If a taxpayer places the IRS on notice during the statutory period that he or she "is in fact making a claim for refund," *id.* at 300, then the IRS can respond by commencing an appropriate factual investigation before the claim becomes stale. In the absence of such a timely notice, however, the IRS would not have sound reason to commence such a timely investigation.

To support his contention that he submitted an informal claim for refund for tax year 1985 within the statutory period, plaintiff relies exclusively upon a series of correspondence from plaintiff to the IRS. Plaintiff does not rely upon any verbal communications between himself and the IRS or any other information generally available to the IRS. For the reasons set forth below, the correspondence upon which plaintiff relies,

viewed individually and collectively, simply did not place the IRS on notice that plaintiff was making a claim for refund for tax year 1985. Therefore, this correspondence does not qualify as an adequate informal claim.

### A.

 The first letter upon which plaintiff relies is a July 18, 1988, letter from plaintiff to the IRS in response to the IRS's request for specific documents to substantiate certain expenses claimed by plaintiff in his 1985 tax return. This letter cannot reasonably be construed as a request for a refund of the credit the IRS applied from plaintiff's 1988 tax overpayment to plaintiff's 1985 tax deficiency. The words of the letter indicate nothing more than a routine response to an IRS audit request for additional information to support a claimed deduction. Moreover, at the time the letter was written, the IRS had not yet completed its audit of plaintiff's 1985 return, disallowed the expenses claimed in plaintiff's 1985 return, or issued the formal Notice of Deficiency. In addition, the credit of plaintiff's 1988 tax overpayment toward plaintiff's 1985 tax liability did not occur until one year after the July 18, 1988, letter.[4] Hence, at the time of the July 18, 1988, letter, plaintiff had not paid any money to the IRS for which a refund could be requested. In this setting, the IRS could not reasonably be expected to have interpreted the July 18, 1988, letter as an informal claim for refund.

### B.

 Next, plaintiff relies upon letters dated March 26 and May 6, 1991, in which plaintiff requested prompt payment of the refund requested in plaintiff's 1988 tax return. In a February 23, 1991, letter, the IRS had informed plaintiff that it accepted plaintiff's 1988 return as filed and explained, as follows:

> On the basis of [the] information [you submitted in support of the income/deductions claimed on your original 1988 tax return],

---

**4.** The court recognizes that it is possible for a taxpayer to submit an informal claim for a tax refund prior to the actual payment of the tax. *See Newton*, 143 Ct.Cl. at 301. At a minimum, however, the circumstances must clearly put the IRS on notice that the taxpayer is claiming a refund contingent upon future events. *Id.* Herein, the July 18, 1988, letter provided no such notice.

we have reconsidered your tax liability for [1988] and are accepting your return as filed. Any payment you may have made, based on our proposed changes, will be refunded to you if you owe no outstanding taxes or legal obligations for which we are required to collect payment.

Because this letter indicated that any refund was subject to any "outstanding taxes or legal obligations," the IRS did not guarantee that plaintiff would receive the full refund requested in his 1988 return. In plaintiff's responsive March 26 and May 6, 1991, letters, however, plaintiff nonetheless requested that the IRS refund the full amount of the overpayment listed in his 1988 return.

The flaw in plaintiff's contention that these two letters constitute an informal claim for refund is that these letters do not mention the 1985 tax year or specify that plaintiff was seeking a refund for that year. Plaintiff is correct that there was a connection between plaintiff's tax liability for 1985 and his tax overpayment for 1988 in that the IRS had applied part of plaintiff's 1988 tax overpayment toward plaintiff's 1985 tax deficiency. But plaintiff's March 26 and May 6, 1991, letters do not make the connection between these two tax years, and the IRS cannot be required to make such a connection. In *Rosengarten v. United States*, 181 F.Supp. 275, 149 Ct.Cl. 287, 294 (1960), the court explained:

> If we are to hold that a certain act constitutes an informal claim alerting the Commissioner to a potential demand for refund which will satisfy the requirements of ... the [Tax] Code, the act must be clear and explicit. An act which merely makes it possible for the Commissioner to discover the existence of a claim if he makes an independent investigation and sorts out the clues will not do.

*See also American Radiator*, 162 Ct.Cl. at 114, 318 F.2d at 920 ("It is not enough that the [IRS] have in its possession information from which it might deduce that the taxpayer

is entitled to, or might desire, a refund....").

Indeed, even if the IRS read plaintiff's March 26 and May 6, 1991, letters, searched plaintiff's tax history, and uncovered the clue that the IRS had applied plaintiff's 1988 tax overpayment toward plaintiff's 1985 tax liability, plaintiff's request for a refund for overpaid 1985 taxes still would not be clear. Other potential explanations for these letters exist. For example, plaintiff simply may have reviewed his 1988 return, recognized that he had indicated an overpayment of $7,774 therein, and requested a corresponding refund, without ever focusing on his 1985 tax liability. In other words, when plaintiff wrote these letters, he may not have remembered, much less intended to dispute, the IRS's conclusion in the July 27, 1988, Notice of Deficiency that plaintiff had underpaid his 1985 taxes. In support of this interpretation, it would seem that if plaintiff had intended the letters to dispute the IRS's use of plaintiff's 1988 tax overpayment to cover plaintiff's 1985 tax liability, then plaintiff would have specifically referenced the connection between the two tax years. The March 26 and May 6, 1991, letters simply did not notify the IRS that plaintiff intended to contest the merits of the IRS's Notice of Deficiency regarding plaintiff's 1985 tax liability or to seek a refund for overpaid 1985 taxes.[5]

## C.

The final letter upon which plaintiff relies is a June 26, 1991, letter from plaintiff to the IRS. Plaintiff wrote this letter in response to a May 30, 1991, letter from the IRS which stated: "Your overpayment in the amount of $7,784.02 was reduced by $7,745.51. This amount was applied to a balance due on your Form 1040 tax account for the period December 31, 1985. A refund check of $38.51 was issued for the remainder." In its June 26, 1991, letter, plaintiff responded: "This is in response to your letter of May 30, 1991, in which you reported that the 1988 overpayment of $7,784.02 was applied to an assessment against the 1985

---

**5.** Plaintiff also relies upon a third letter that addresses plaintiff's tax liability for 1988. In a December 27, 1990, letter, plaintiff indicated that he was searching for documents to substantiate certain expenses claimed in his 1988 return. The letter mentions nothing specifically or implicitly about any refund or dispute concerning plaintiff's 1985 return.

Form 1040. Please advise me exactly when this was applied."

Plaintiff's letter simply poses a factual question—plaintiff asks the IRS to identify the specific date on which the IRS applied plaintiff's 1988 overpayment to his 1985 liability. The letter contains no explicit or implicit objection to the IRS's actions and does not indicate that plaintiff intended to dispute either the IRS's determination that plaintiff had been deficient in his 1985 tax payments or the IRS's decision to apply plaintiff's 1988 tax overpayment toward plaintiff's 1985 tax deficiency.

In sum, the correspondence upon which plaintiff relies in Count III, viewed individually and collectively, cannot qualify as an informal claim because the various letters did not "put the [IRS] on notice of what the taxpayer [was] claiming and that he [was] in fact making a claim for a refund." *Newton,* 143 Ct.Cl. at 300. These letters do raise a series of questions, most applying to the 1988 tax year, but none indicates that plaintiff disputed the merits of the IRS's Notice of Deficiency for tax year 1985 or intended to demand a refund of taxes allegedly overpaid for 1985.

### Conclusion

For the reasons set forth above, defendant's motion for summary judgment is granted on all counts of plaintiff's complaint. The Clerk of the Court shall enter judgment accordingly. No costs.

IT IS SO ORDERED.