STELCO HOLDING COMPANY, and
Pikeville Coal Company,
Plaintiffs,

v.

The UNITED STATES, Defendant.

Nos. 95–81T, 97–168T.

United States Court of Federal Claims.

Sept. 29, 1998.

Robert E. Glaser, Cleveland, Ohio, attorney of record for plaintiffs.

George L. Squires, Washington, DC, with whom was Assistant Attorney General Loretta C. Argrett, for defendant.

## OPINION

REGINALD W. GIBSON, Senior Judge.

### INTRODUCTION

In case no. 97–168T, Stelco Holding Company and its consolidated subsidiaries (hereinafter plaintiff or Stelco) seek a refund of federal income taxes allegedly overpaid for the taxable years 1981 through 1995, inclusive.[1] On June 3, 1998, the Government

---

**1.** Said case has been consolidated with case no. 95–81T, wherein Pikeville Coal Company, a wholly-owned subsidiary of Stelco, seeks a refund of federal income taxes allegedly overpaid for the taxable years 1978 through 1980, inclusive. This opinion is addressed exclusively to case no. 97–168T and decides no issues relating to case no. 95–81T.

filed: (i) a motion pursuant to RCFC 12(b)(4) to dismiss with prejudice Stelco's claims for the taxable years 1982 and 1983 for failure to state a claim upon which relief can be granted inasmuch as all taxes previously paid for said years have been refunded; (ii) a motion pursuant to RCFC 12(b)(1) to dismiss without prejudice Stelco's claims for the taxable years 1987 and 1988 for lack of subject matter jurisdiction inasmuch as for said years taxpayer realized an NOL and no taxes were paid; and (iii) a motion pursuant to RCFC 12(b)(1) to dismiss without prejudice Stelco's claims for the taxable years 1984 through 1995, inclusive, for lack of subject matter jurisdiction inasmuch as said complaint was prematurely filed in violation of the six-month waiting period from the date of filing the claim for refund. § 6532(a)(1). For the reasons set forth herein, and after a thorough consideration of the legal authorities and the submissions of the parties, the court: (i) dismisses the complaint *sua sponte,* with prejudice, in case no. 97–168T insofar as it relates to Stelco's claims for the years 1982, 1983, 1987, 1988, and 1992; and (ii) grants defendant's motion and dismisses Stelco's claims for the taxable years 1984, 1985, 1986, 1989, 1991, 1993, 1994, and 1995 without prejudice.

## DISCUSSION

A. *Dismissal of Taxable Years 1982 and 1983—All Taxes Paid Previously Refunded.*

The introductory paragraph of the subject complaint, filed March 17, 1997, specifically and unambiguously avers that Stelco "brings this action ... to recover ... federal income taxes for taxable years 1981 through 1983." Complaint at 1, ¶ 1. Notwithstanding the foregoing, said complaint alleges no overpayment and seeks no refund of taxes therein for the taxable years 1982 and 1983. Moreover, Stelco candidly admits that "[n]o

claim[s] for refund [were] made for 1982 and 1983 in the complaint.... Plaintiffs do not seek refunds for tax years 1982 and 1983 because no taxes remain paid for those years [which may be the subject of a refund]." Plaintiff's Brief Re: Motion Of The United States To Dismiss Plaintiff's Claims For 1982 And 1983, filed June 17, 1998, at 4 and 5. Plaintiff's Memorandum To Show Cause, filed May 29, 1998 (Pl. Mem. Show Cause), at 1–2. Stelco curiously argues, in spite of the foregoing, that the Government's motion to dismiss the years 1982 and 1983 should be denied because there are no refund claims pleaded for those years for the court to act upon.

In view of plaintiffs' judicial admissions, *supra,* it is patently clear that for the taxable years 1982 and 1983, as required by § 6511(a),[2] plaintiffs have not sought a "claim for refund"; and, as required by § 6532(a) and § 7422, plaintiffs have not sought the "recovery ... of any tax." Failing such, it is clear beyond cavil that, for such years, plaintiffs seek no relief within the power of this court. Therefore, we are without jurisdiction respecting said years and, accordingly, pursuant to RCFC 12(b)(1) and 12(h)(3), we must dismiss Stelco's claims for the taxable years 1982 and 1983 with prejudice.

B. *Dismissal of Taxable Years 1987 and 1988—Taxpayer Failed To File §§ 6511 and 7422 Claims For Refund/Said Years Are NOL Years—No Tax Paid.*

In its complaint, Stelco averred that it had overpaid its income taxes for the taxable years 1987 and 1988 in the amounts of $6,584.00 and $563,281.00, respectively. Stelco has since conceded that it failed to file administrative refund claims respecting the years 1987 and 1988 with the Internal Revenue Service prior to the expiration of the statute of limitations for those years. *See* §§ 6511(a), (b)(1).[3] Plaintiff's Brief Re: Mo-

---

2. Section references herein are to the Internal Revenue Code of 1986, Title 26, U.S.Code, as in effect during the time frame(s) pertinent to such administrative claims for refund as Stelco may have filed with the IRS and the filing of Stelco's complaint in this court.

3. Section 6511(a) and (b)(1) provide, in pertinent parts, as follows:
 (a) PERIOD OF LIMITATION ON FILING CLAIM.—Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return *shall be filed by the taxpayer within 3 years from the time the return was filed* or

tion Of The United States To Dismiss Plaintiff's Claims For 1987 And 1988 (Pl.Br.1987–88), filed June 17, 1988, at 2, 5, 6.[4]

It is firmly settled that a properly filed administrative claim for refund is the indispensable prerequisite to this court's exercise of jurisdiction over a taxpayer's suit for refund. § 7422(a); *United States v. Felt & Tarrant Mfg. Co.*, 283 U.S. 269, 272, 51 S.Ct. 376, 75 L.Ed. 1025 (1931). Recently, the Supreme Court unanimously reaffirmed the long-standing principle that the limitations period under § 6511(a) is jurisdictional, and must be strictly construed against a taxpayer whose administrative claim for refund is untimely filed. *United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 851–52, 136 L.Ed.2d 818 (1997) (rejecting the argument that the doctrine of equitable tolling had suspended the running of the limitations period). *See also United States v. Dalm*, 494 U.S. 596, 602, 608–10, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (no exception based upon the doctrine of equitable recoupment to limitations period under § 6511).[5] In failing to meet the requirements of § 6511(a), the taxpayer necessarily fails to satisfy the requirements of § 7422, which provides, *inter alia*, that—"No suit ... shall be maintained in any court for the recovery

> 2 years from the time the tax was paid, whichever of such periods expires the later....
> (b) LIMITATION ON ALLOWANCE OF CREDITS AND REFUNDS.-
> (1) FILING OF CLAIM WITHIN PRESCRIBED PERIOD.—*No credit or refund shall be allowed or made* after the expiration of the period of limitation prescribed in subsection (a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

4. As more fully explicated *infra*, Stelco and the Government had entered into written agreements extending the statute of limitations through December 31, 1996, with respect to refund claims for the taxable years 1981, 1982, 1983, 1984, 1985, 1986, 1989, 1990, and 1991. Furthermore, Stelco has submitted what purport to be administrative refund claims for the years 1981, 1982, 1983, 1984, 1985, 1986, 1989, 1990, and 1991, that were allegedly filed with the IRS prior to the December 31, 1996 deadline established by the agreements of the parties, *supra*. *Id.* at Exhibit E (Forms 1120X). Purported refund claims were also filed for the years 1992 through 1995 allegedly on or about December 4 and 17, 1996. Notably absent from the aforesaid sub-

of any ... tax ... until a claim for refund has been duly filed with the Secretary."

In acknowledging the application of the aforesaid fundamental principles here at bar, Stelco grudgingly concedes that the Government's "motion to dismiss 1987 and 1988 should *ultimately* be granted," but warmly urges the court to defer judgment as to the jurisdictional defects associated with Stelco's claims for those years. Pl. Br.1987–88 at 7 (emphasis added). We decline Stelco's invitation to reserve ruling on the jurisdictional issue. The Supreme Court has very recently addressed and repudiated the judicial practice of "proceed[ing] immediately to the merits question, despite jurisdictional objections, ... where (1) the merits question is more readily resolved, and (2) the prevailing party on the merits would be the same as the prevailing party were jurisdiction denied." *Steel Company v. Citizens For A Better Environment,* —— U.S. ——, ——, 118 S.Ct. 1003, 1012, 140 L.Ed.2d 210 (1998). In *Steel Company,* the Court expressly "decline[d] to endorse such an approach because it carries the courts beyond the bounds of authorized judicial action and thus offends fundamental principles of separation of powers." *Id., following Ex parte McCardle,* 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868) ("Without juris-

mission were any documents purporting to be administrative refund claims for the taxable years 1987 and 1988. Indeed, Stelco readily admits that 1987 and 1988 were omitted from the foregoing agreements extending the statute of limitations through December 31, 1996. *Id.* at 4–5. In any event, Stelco avers that the years 1987 and 1988 are merely loss years through which carryforwards, *i.e.*, net operating losses, from previous years are expected to carry. *Id.* at 5; Pl. Br.1987–88 at 2, 7.

5. The Court's rationale for demanding strict compliance with the limitations period under § 6511(a) is not only familiar but manifestly clear:

> Under settled principles of sovereign immunity, "the United States, as sovereign, 'is immune from suit, save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'"

*Dalm,* 494 U.S. at 608, 110 S.Ct. 1361 (quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941))).

diction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). *See also RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1460 (Fed.Cir. 1998) (reversible error to reach merits of tax refund suit without first considering existence of subject matter jurisdiction).

Here at bar, there are no tenable grounds for retaining jurisdiction over the time-barred years 1987 and 1988, as to which Stelco judicially admits that no administrative claims for refund were timely filed. Consequently, given the Supreme Court's unmistakable rejection of the "doctrine of hypothetical jurisdiction" in *Steel Company*, —— U.S. at ——, 118 S.Ct. at 1012, this court has no choice but to dismiss Stelco's complaint *with prejudice* for want of subject matter jurisdiction, pursuant to RCFC 12(b)(1) and 12(h)(3), insofar as it relates to the years 1987 and 1988.

C. *Dismissal of Taxable Years 1984–1986 and 1989–1995—For Failure To Comply With § 6532(a)(1) (Commencing Suit Prior To Expiration Of Six Months From Filing Claims For Refund).*

1. *Background.*

Stelco's complaint, filed March 17, 1997, alleges that the operative events underlying its suit for refund occurred during its taxable years 1981 through 1983, inclusive. Such operative events are somewhat inartfully pleaded in the complaint, but are further illuminated by numerous other filings Stelco has made with the court. Specifically, Stelco alleges that it is entitled to a favorable ad-

justment of certain consolidated return carryovers from the years 1981–1983, *i.e.*, net operating loss carryovers under § 172(b),[6] to the years 1984–1986 and 1989–1995, on two grounds: (i) the Coal Price Issue; and (ii) the Corn Products Issue. The Coal Price Issue relates to Stelco's contention that the taxable income reported in its consolidated tax returns for the years 1981–1983 must be reduced because Pikeville Coal Company, Stelco's wholly-owned domestic subsidiary, sold coal during the period 1981–1983 to Stelco, Inc., the Canadian parent corporation of the Stelco/Pikeville domestic group of corporations, at prices which exceeded the arm's-length, fair market price of such coal. The parties have informed the court of their intention to enter into an agreement settling their dispute over the Coal Price Issue,[7] but the ultimate tax effect, if any, of such a settlement upon Stelco's carryovers to taxable years subsequent to the 1981–1983 period remains indeterminate at this time, *i.e.*, until such time as the merits are resolved.

More contentious than the foregoing is the so-called Corn Products Issue, which centers upon the tax character of a stock loss in the sum of roughly $16.4 million, allegedly realized upon the April 1983 liquidation of Erie Mining Company, a Minnesota corporation in which Stelco Erie Corporation, another of Stelco's wholly-owned domestic subsidiaries, owned a partial interest. Relying upon the Supreme Court's decision in *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955), Stelco asserts that it is entitled to treat the aforesaid stock loss as ordinary, rather than capital, in character.[8] Were Stelco to prevail as to the substantive merits of the Corn Products Issue,

---

6. As in effect for all of the taxable years at issue here, § 172(b)(1)(A) provides generally that a taxpayer, upon incurring a net operating loss for a particular taxable year, is entitled to carry back such loss to the immediate three *preceding* taxable years and, further, carry over such loss to the next 15 succeeding taxable years.

7. The parties' proposed settlement of the Coal Price Issue also involves case no. 95–81T, consolidated herewith, which presents essentially the same issue with respect to the taxable years 1978, 1979, and 1980. *See Pikeville Coal Co. v. United States*, 37 Fed.Cl. 304, 306–08 (1997).

8. The court expresses no opinion herein respecting the substantive merits of the parties' respective arguments concerning the Corn Products Issue, as to which the parties have also filed cross-motions for summary judgment pursuant to RCFC 56. Motion Of The United States For Summary Judgment, filed June 3, 1998; Plaintiff's Cross Motion For Summary Judgment, filed June 24, 1998. Of necessity, the jurisdictional issues raised by the Government's RCFC 12(b)(1) motion must take precedence. *Steel Company*, —— U.S. at ——, 118 S.Ct. at 1012.

such that the loss at issue were determined to be ordinary in character, thus deductible in full, Stelco alleges that its carryovers from 1983 to the years 1984–1986 and 1989–1995 would increase by some amount, not yet determined, and thereby result in a refund of some or all taxes paid in one or more of those subsequent years, not · yet identified.

As the party seeking to invoke this court's jurisdiction, for the taxable years 1984 to 1986 and 1989 to 1995, Stelco has the burden of establishing the indispensable jurisdictional facts by a preponderance of the evidence. *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988). *See also Cedars–Sinai*, 11 F.3d at 1583; *Morris*, 33 Fed.Cl. at 742. One of the indispensable jurisdictional facts in a tax refund suit, as noted herein, *supra*, is the taxpayer's prior filing of a *timely* administrative refund claim with the IRS. §§ 6511(b)(1), 7442(a); *Felt & Tarrant Mfg. Co.*, 283 U.S. at 272, 51 S.Ct. 376; *Dalm*, 494 U.S. at 608–09, 110 S.Ct. 1361; *Brockamp*, 519 U.S. 347, 117 S.Ct. at 851. Seeking to discharge such burden with respect to this court's jurisdiction respecting the taxable years 1984–1986 and 1989–1995, Stelco has submitted copies of *what purport to be* administrative refund claims (Forms 1120X) for those years, allegedly filed with the IRS *in December of 1996*. Each of the aforesaid putative administrative refund claims, by way of explicating the substantive grounds on which it is asserted, states:

> The taxpayer is engaged in pending litigation for earlier tax years which may result in carryovers to this tax year. Accordingly, the taxpayer requests a refund of all taxes paid. This is a protective claim for refund.

Against the foregoing background, the court must decide whether to sustain or deny the following two Government objections to subject matter jurisdiction over Stelco's claims for the years 1984–1986 and 1989–1995. First, the Government contends that the explanatory statement, *supra*, in each of Stelco's purported administrative refund claims for those years failed to put the Government on reasonable notice that such claims rest, at least in part, upon Stelco's asserted entitlement to a $16.4 million ordinary loss in 1983 (*i.e.*, the Corn Products Issue), which allegedly created or increased carryovers giving rise to refunds of taxes previously paid by Stelco for one or more of the years 1984–1986 and 1989–1995. · In short, the defendant challenges the efficacy of the purported claims. Second, and more definitive, the Government also warmly contends that because Stelco's complaint for the aforesaid tax years was filed in this court on March 17, 1997, only about three months after Stelco filed the underlying administrative refund claims in December 1996 for the years 1984–1986 and 1989–1995 with the IRS, said complaint was clearly prematurely filed in violation of the six-month waiting period prescribed in § 6532(a)(1). The court addresses these issues *seriatim.*

2. *Legal Sufficiency Of The Purported Administrative Refund Claims—Taxable Years Ended 1984–1986 and 1989–1995.*

Stelco's administrative refund claims for the years 1984–1986 and 1989–1995 cannot satisfy the jurisdictional requirements for maintenance of a tax refund suit respecting those years unless such filings: (i) were made within the limitations period prescribed in § 6511(a); and (ii) are proper "claims" satisfying the requirements of § 7422(a).[9] *See Wall Industries, Inc. v. United States*, 10 Cl.Ct. 82, 95 (1986). As to the timeliness element pursuant to § 6511(a), respecting the years 1984, 1985, 1986, 1989, 1990, and 1991, Stelco has submitted copies of written agreements (Forms 872) that it and the IRS entered into in March of 1995, pursuant to which the limitations period for filing administrative refund claims for those years was

---

**9.** Section 7422 provides, in relevant part:

*No suit or proceeding shall be maintained in any court* for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed ... *until a claim for refund*

*... has been duly filed* with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

§ 7422(a) (emphasis added).

extended to December 31, 1996.[10] Inasmuch as Stelco's administrative refund claims for the years 1984, 1985, 1986, 1989, 1990, and 1991, made on Forms 1120X, bear December 4, 1996, as the date of their execution by Stelco's authorized representative, and defendant has failed to challenge said date, we find that Stelco has made out a *prima facie* case that its administrative refund claims for those years were timely filed.[11]

Stelco's claim Forms 1120X for 1993, 1994, and 1995, the three most recent years in issue, likewise indicate that such filings were executed by Stelco's authorized representative on December 4, 1996. One need not reflect long on the matter to reach the conclusion that, as of that time, the three-year limitations period of § 6511(a) had not expired for any of those three taxable years.[12] Accordingly, the court finds that Stelco has made out a *prima facie* case that its administrative refund claims for the years 1993, 1994, and 1995 were also timely filed.

We reach the opposite conclusion, however, regarding Stelco's Form 1120X for the tax-

able year 1992. Stelco has represented in writing to the court that it regularly files its corporation income tax return, for each calendar year, in September of the succeeding year. Absent any evidence to the contrary, and given the evident reasonableness of Stelco's representation,[13] the court is constrained to conclude that Stelco timely filed its 1992 tax return on or about September 15, 1993. This finding compels the conclusion, therefore, that the three-year statute of limitations under § 6511(a) expired on or about September 15, 1996. Further, Stelco's administrative refund claim for taxable year 1992, Form 1120X, plainly indicates that it was not executed by Stelco's authorized representative until December 17, 1996. Thus, on this record, the evidence is persuasive that, since the § 6511 limitation period runs three years from the date of filing, *i.e.*, September 15, 1993, or September 15, 1996, Stelco has failed to carry its burden of establishing that its *formal* administrative refund claim for 1992 was timely filed.[14] Nor, as the ensuing dis-

10. Section 6501(c)(4) authorizes the Secretary and the taxpayer to enter into a written agreement extending the limitations period for the assessment of any tax imposed by the Code. Section 6511(c)(1) provides that where the limitations period for assessment is so extended, the limitations period for filing an administrative claim for refund is extended six months beyond the expiration of the extended limitations period for assessment. Here at bar, pursuant to the Forms 872 executed by Stelco and the IRS in March of 1995, the limitations period on the assessment of taxes for the years 1984, 1985, 1986, 1989, 1990, and 1991 was extended through June 30, 1996. Consequently, pursuant to § 6511(c)(1), as incorporated into the express terms of such Forms 872, the limitations period for filing administrative refund claims for those years was extended through December 31, 1996.

11. A *prima facie* showing suffices for present purposes, since the Government has presented no evidence tending to demonstrate that any of Stelco's purported administrative refund claims for the years 1984–1986 and 1989–1995 were untimely filed.

12. Because the three-year limitations period of § 6511(a) commences on the date the tax return is filed for the year in question, said limitations period obviously had not expired as of December 1996, so far as 1994 and 1995 are concerned. As to 1993, the earliest conceivable date on which Stelco could have filed its corporation income tax return would have been on January

1, 1994, the earliest possible (though by no means the most plausible) date on which Stelco could have closed its books and records for the calendar year 1993. Thus, January 1, 1997, is the earliest conceivable date on which the three-year limitations period of § 6511(a) could have run with respect to 1993.

13. The filing practice Stelco describes is not uncommon among corporate taxpayers that maintain their books and records on the basis of the calender year. A corporation must file its income tax return not later than the 15th day of the third month following the close of its fiscal year, *i.e.*, March 15 in the case of a calendar-year taxpayer such as Stelco. § 6072(b). By filing Form 7004 prior to the aforesaid due date, however, a corporation is entitled to an automatic six-month extension of time in which to file its income tax return, *i.e.*, to September 15 in Stelco's case. Treas. Reg. §§ 1.6081-3(a)(1), (a)(2).

14. The foregoing conclusion is unaffected by Stelco's uncorroborated assertion that its administrative refund claim for 1992 was filed in June of 1996. Assuredly, Stelco's administrative claim for refund filed in December of 1996 bears the typewritten headings, "AMENDED PROTECTIVE CLAIM FOR REFUND" and "ORIGINALLY FILED JUNE 24, 1996," and includes on its second page the explanatory statement: "The claim for refund as originally filed is incorporated herein." However, Stelco has failed to submit any document purporting to be its "original"

cussion shall demonstrate, has Stelco established, on this record, that it made a timely *informal* administrative refund claim for its taxable year 1992. Before completing our inquiry as to the efficacy of Stelco's 1992 refund claim, the court shall first consider whether, timeliness aside, Stelco's administrative refund claims for the taxable years 1984–1986, 1989–1991, and 1993–1995 are proper "claims" satisfying the requirements of § 7422(a).

a. *Administrative Refund Claims For The Taxable Years 1984–1986, 1989–1991, and 1993–1995—Adequacy Under § 7422(a).*

 In evaluating the adequacy of Stelco's Forms 1120X under § 7422(a) for the years 1984–1986, 1989–1991, and 1993–1995, our analysis takes its cue from a fundamental premise ably explicated by this court's predecessor, the Court of Claims, wherein it was stated that:

> A proper claim for refund must set forth in detail each ground upon which the refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.... Any ground for refund not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated.... The reason for this is both to prevent surprise and to give adequate notice to the Commissioner of the nature of the claim, and its underlying facts, so that a thorough administrative investigation and determination can be made.

*Burlington Northern Inc. v. United States,* 231 Ct.Cl. 222, 225, 684 F.2d 866, 868 (1982) (citations omitted). "In addition, the Commissioner is provided with an opportunity to correct any errors, and if disagreement remains, to limit the scope of any ensuing litigation to those issues which have been examined and which he is willing to defend." *Union Pacific R.R. Co. v. United States,* 182 Ct.Cl. 103, 109, 389 F.2d 437, 442 (1968) (citations omitted).

Ordinarily, in the case of a corporate taxpayer, the requirement that a proper claim for refund be filed is satisfied, as Stelco sought to do here at bar, by filing a formal claim with the IRS on Form 1120X. *Wall Industries,* 10 Cl.Ct. at 96 (citing Treas. Reg. § 301.6402–3(a)(3)). Each of Stelco's "protective" Forms 1120X for its taxable years 1984–1986, 1989–1991, and 1993–1995 plainly manifests certain vital elements of a valid administrative claim for refund, such as—(i) notice to the Commissioner that a claim for refund is being made; (ii) for a sum certain; and (iii) for a particular taxable period. *Wall Industries,* 10 Cl.Ct. at 98 (citing *Furst v. United States,* 230 Ct.Cl. 375, 381, 678 F.2d 147, 151 (1982); *Newton v. United States,* 143 Ct.Cl. 293, 299, 163 F.Supp. 614, 618 (1958)). *See also American Radiator & Standard Sanitary Corp. v. United States,* 162 Ct.Cl. 106, 114, 318 F.2d 915, 920 (1963). What is not clear is whether the explanatory reference in the aforesaid filings to "pending litigation for earlier tax years which may result in carryovers to this tax year" is sufficient to apprise the Commissioner "in detail" of the operative facts and "each" legal ground on which Stelco's claims are asserted. The adequacy of such sweeping and ambiguous language, as here, standing alone, is doubtful. "Neither the Commissioner nor his agents can be expected to ferret out any possible grounds for relief which a taxpayer might assert." *Union Pacific,* 182 Ct.Cl. at 113, 389 F.2d at 445.

1992 administrative refund claim allegedly filed on June 24, 1996. Such failure to produce, of course, gives rise to a negative evidentiary presumption under the adverse inference rule, which "provides that when a party has relevant evidence within its control and fails to produce such [or to explain such failure], that failure raises the presumption that if in fact produced, it would be unfavorable to its cause." *Day & Zimmermann Services v. United States,* 38 Fed.Cl. 591, 602 n. 13 (1997) (citing *International Union (UAW) v. NLRB,* 459 F.2d 1329 (D.C.Cir.1972)). *See also Barnett v. United States,* 6 Cl.Ct. 631,

671 (1984) (citing, *inter alia, Culbertson v. The Southern Belle,* 59 U.S. (18 How.) 584, 588 (1855)). Furthermore, and mindful that "the party asserting jurisdiction must be given an opportunity to be heard before dismissal is ordered," Reynolds, *846 F.2d at 748,* the court has allowed Stelco no fewer than *four opportunities to show that its administrative refund claims for the years at issue satisfy all of the jurisdictional prerequisites to the maintenance of a tax refund suit. Thus, Stelco's failure to produce its alleged "original" 1992 administrative refund claim is unpardonably fatal.*

Stelco emphatically maintains, however, that its filings of "protective" Forms 1120X in December of 1996 were merely the culmination of an exhaustive dialogue with the IRS, spanning many years, regarding the issues of fact and law in controversy here at bar, *i.e.,* the Coal Price Issue and the Corn Products Issue. Given its lengthy course of dealings with the IRS concerning such matters, Stelco reasons, its timely filed "protective" Forms 1120X should be deemed efficacious, at a minimum, in accordance with the standards applicable to "informal" claims for refund. On this record, the court agrees.

■ Courts have long applied the *informal* claim doctrine in order to exercise jurisdiction over cases in which the taxpayer's formal administrative claim for refund is untimely filed, where the facts and circumstances transpiring prior to the expiration of the statute of limitations, viewed in their totality, demonstrate that the Commissioner was given timely and adequate informal notice that the taxpayer sought a refund of taxes overpaid. *United States v. Kales,* 314 U.S. 186, 194, 62 S.Ct. 214, 86 L.Ed. 132 (1941); *Arch Engineering Co., Inc. v. United States,* 783 F.2d 190, 192 (Fed.Cir.1986); *Burlington Northern,* 231 Ct.Cl. at 225, 684 F.2d at 868; *Furst,* 230 Ct.Cl. at 380–81, 678 F.2d at 151; *Union Pacific,* 182 Ct.Cl. at 109–113, 389 F.2d at 442–45; *American Radiator,* 162 Ct.Cl. at 113–14, 318 F.2d at 920; *Newton,* 143 Ct.Cl. at 299–300, 163 F.Supp. at 618–19; *Wall Industries,* 10 Cl.Ct. at 97–98; *Kidde Industries, Inc. v. United States,* 40 Fed.Cl. 42, 61 (1997); *New England Elec. System v. United States,* 32 Fed.Cl. 636, 645 (1995). The cases agree that the one indispensable element of an informal claim for refund is a "written component." *Arch Engineering,* 783 F.2d at 192; *Wall Industries,* 10 Cl.Ct. at 98 (citing *Newton,* 143 Ct.Cl. at 300, 163 F.Supp. at 619; *American Radiator,* 162 Ct.Cl. at 113, 318 F.2d at 920). It must be shown, of course, that such "written component" was in the possession of the IRS *prior* to the expiration of the limitations period under § 6511. *American Radiator,* 162 Ct.Cl. at 113, 115, 318 F.2d at 920; *Furst,* 230 Ct.Cl. at 380, 678 F.2d at 151. Yet, apart from the requirement of a "written component," there are otherwise no rigid guidelines for determining whether the taxpayer has made a valid informal claim for refund. *Arch Engineering,* 783 F.2d at 192. *See also Wall Industries,* 10 Cl.Ct. at 98 ("[T]he cases in this court emphasize that there is no preconceived set of universal facts and circumstances which otherwise define an efficacious formal claim.") (citing *Newton,* 143 Ct.Cl. at 300, 163 F.Supp. at 619).

■ Of course, on this record, the informal claim doctrine has no *literal* application so far as the years 1984–1986, 1989–1991, and 1993–1995 are concerned, inasmuch as Stelco's *formal* administrative refund claims for those years were *timely* filed in December 1996. It is incontestable, however, that "a timely informal claim ... *serves the same function* as a formal refund claim, 'to put the Commissioner on notice that a right is being asserted with respect to an overpayment of tax....'" *Furst,* 230 Ct.Cl. at 380, 678 F.2d at 151 (emphasis added) (quoting *Newton,* 143 Ct.Cl. at 299, 163 F.Supp. at 618). *See also Wall Industries,* 10 Cl.Ct. at 98 (formal claims and informal claims are *"based on the same fundamental premise* that 'notice' to the Commissioner must be provided" (emphasis added)). Each of Stelco's timely filed formal administrative refund claims is, moreover, the obvious functional equivalent of the "written component" of an informal claim for refund. Therefore, we conclude that Stelco's timely filed Forms 1120X for the years 1984–1986, 1989–1991, and 1993–1995 "should not be given a crabbed and literal reading, ignoring all the surrounding circumstances which give [them] body and content. The focus is on the claim *as a whole,* not merely the written component." *American Radiator,* 162 Ct.Cl. at 114, 318 F.2d at 920 (emphasis added). *See also Furst,* 230 Ct.Cl. at 380, 678 F.2d at 151 ("The written component must be examined ... in light of all the facts and circumstances."); *New England Electric System,* 32 Fed.Cl. at 645 ("A court must examine the facts and circumstances to discern whether the total mix of the written component and the particular facts indicate that the IRS knew or should have known that the taxpayer was asserting a right to a refund.").

Given the foregoing, the question is whether Stelco's written assertion in its formal administrative claims for refund as to "pending litigation for earlier tax years which may result in carryovers to this tax year," read in conjunction with the totality of the underlying facts and circumstances, constituted adequate notice to the Commissioner of the factual and legal grounds on which Stelco's claims rest, *i.e.*, the Coal Price Issue and the Corn Products Issue. Based upon several items of credible documentary evidence submitted by Stelco, the court holds that adequate notice was indeed given to the Service respecting the taxable years 1984–1986, 1989–1991, and 1993–1995. We begin with an IRS Report Transmittal respecting Pikeville Coal Company's taxable years 1972 through 1980, filed by Revenue Agent G.R. Modica on April 25, 1990, and approved by an IRS case manager (unidentifiable due to his or her illegible signature) on May 29, 1990, in which the following narrative explanation is set forth:

This case was previously closed agreed out of the Examination Division in October of 1988. It was forwarded to Cincinnati, Ohio for Joint Committee review.

During the review of this case, the Joint Committee review staff raised an issue on Stelco Coal Holding Company (the future consolidated parent of Pikeville Coal Co.) which recharacterized an ordinary loss on the disposition of Erie Mining Co. stock as a capital loss. This was done applying the rationale of *Arkansas Best Corp. v. Commissioner*, [485 U.S. 212, 108 S.Ct. 971, 99 L.Ed.2d 183 (1988) ].

Because of the above issue, the Taxpayer withdrew their previous agreements and decided to have entire case be unagreed.

---

15. Stelco Coal Holding Company was Stelco's former name. Effective with the 1981 taxable year, Stelco became the domestic parent of Pikeville Coal Company.

16. Further confirmation of this point is found in the reference to the Supreme Court's *Arkansas Best* decision, wherein the Court re-examined the scope of the so-called *Corn Products* doctrine. *See Arkansas Best Corp. v. Commissioner*, 485 U.S. 212, 215–23, 108 S.Ct. 971, 99 L.Ed.2d 183 (1988) (construing *Corn Products Refining Co. v. Commissioner*, 350 U.S. 46, 76 S.Ct. 20, 100 L.Ed. 29 (1955)).

Please see the previous Transmittal Letter attached for all other details including Joint Committee requirements.

Plaintiff's Brief In Opposition To Motion Of The United States To Dismiss Without Prejudice Plaintiff's Claims for 1984 Through 1995, filed June 17, 1998 (Pl.Brf.1984–95), at Exhibit B.[15] The reference in the foregoing Report Transmittal to the character, *i.e.*, ordinary or capital, of Stelco's loss on the disposition of Erie Mining Co. stock is, of course, the very essence of the Corn Products Issue.[16] Thus, said Report Transmittal clearly demonstrates that the IRS was fully aware of the Corn Products Issue at least six and one-half years prior to December of 1996, when Stelco filed the formal administrative refund claims at issue here. Moreover, the reference to "Joint Committee review" plainly implies that the Corn Products Issue had arisen in conjunction with an assertion by Stelco, during the course of administrative proceedings before the IRS, that it was entitled to a refund of taxes of sufficient magnitude to be subject to review by the congressional Joint Committee on Taxation pursuant to § 6405. During the pertinent time period, § 6405 provided, in relevant part:

No refund or credit of any income ... tax ... in excess of $200,000 shall be made until after the expiration of 30 days from the date on which a report giving *the name of the person to whom the refund or credit is to be made, the amount of such refund or credit, and a summary of the facts and the decision of the Secretary*, is submitted to the Joint Committee on Taxation. § 6405(a) (1988) (emphasis added).[17] Giv-

---

17. The Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 11834(a), 104 Stat. 1388–560, increased the $200,000 reporting threshold for Joint Committee refund cases to $1,000,000. Section 11834(b) of the Act provides, however, that the increased reporting threshold is inapplicable to reports submitted to the Joint Committee prior to the Act's date of enactment, *i.e.*, November 5, 1990. Thus, it appears that the former reporting threshold of $200,000 was applicable to Stelco's case, as to which the IRS made a report to the Joint Committee in late 1988.

en the subject matter and required contents of the report required under § 6405(a), it is readily apparent that the IRS had specific, detailed knowledge of the Corn Products Issue and had, in fact, considered such issue as a potential basis for granting an income tax refund to Stelco.

In addition to the foregoing, Stelco has also submitted, as exhibits to its complaint, copies of its formal administrative claims for refund for the years 1981, 1982, and 1983, as timely filed with the IRS on November 10, 1992.[18] Thus, as of December 1996, when Stelco filed its Forms 1120X for the years 1984–1986, 1989–1991, and 1993–1995, the IRS had possessed Stelco's 1981–1983 refund claims for over four years. Explanatory statements attached to the Stelco's 1981–1983 refund claims clearly identify the Coal Price Issue as an asserted ground for recovery with respect to Stelco's claims for 1981, 1982, and 1983, and the Corn Products Issue as an asserted ground for recovery with respect to 1983. What is more, said administrative refund claims reflect substantial net operating losses (NOLs), as follows:

| Year | Taxable Income (Loss) Reflected On Form 1120X "As Originally Reported" Or As Adjusted" [19] | Taxable Income (Loss) Reflected On Form 1120X As "Correct Amount" [20] |
|---|---|---|
| 1981 | ($6,649,311) | ($12,052,491) |
| 1982 | ($6,366,917) | ($ 9,576,684) |
| 1983 | ($9,389,918) | ($27,068,962). |

That Stelco had incurred large NOLs for the years 1981–1983 and, further, sought to significantly increase such NOLs, surely suggested to IRS personnel the likelihood, if not the substantial probability, of NOL carryovers to a number of post–1983 taxable years. Such awareness of the post–1983 implications of Stelco's NOL carryovers is clearly manifest in the IRS examination report dated April 6, 1994, prepared by Ms. Lori Detweiler, the Revenue Agent assigned to examine Stelco's administrative refund claims for 1981, 1982, and 1983, and the effects of such claims, if sustained, upon subsequent taxable years. Agent Detweiler's report contains detailed narrative explanations of both the Coal Price Issue and the Corn Products Issue. Furthermore, it cannot be doubted that Agent Detweiler knew that both issues had carryover implications for taxable years subsequent to the 1981–1983 period. Indeed, her audit report expressly acknowledges the carryover implications of the Corn Products Issue with respect to the years 1984, 1985, and 1986. In addition, Agent Detweiler's worksheet titled "Spread Sheet Analysis" portrays intricate NOL carryover computations extending throughout the years 1981, 1982, 1983, 1984, 1985, 1986, 1988, 1989, 1990, and 1991.

Importantly, although the aforesaid Spread Sheet Analysis reflects the IRS's position that Stelco's administrative refund claims for the years 1981–1983 should be *denied in full*, said workpaper nevertheless acknowledges that Stelco incurred substantial NOLs arising in each of the years 1981, 1982, and 1983. Such NOLs are shown to carry over at least to the years 1984, 1985, and 1986, thereby eliminating Stelco's taxable income in those years. Moreover, the Spread Sheet Analysis further indicates that Stelco generated additional, fresh NOL carryovers during its taxable years 1987, 1988, 1990, and 1991, and that the NOL carryovers arising from 1987 and 1988 eliminated Stelco's taxable income for the taxable year 1989. Thus, even under the Government's view, as hospitably evidenced in Agent Detweiler's workpapers, it is clear beyond cavil that Stelco's net taxable income during the taxable years 1981 through 1991, in the aggregate, constituted a negative sum. This circumstance, of course, compels the conclusion that the Service actually knew or should have known, as of April 6, 1994 (the date of Agent Detweiler's report), that, were Stelco to *prevail* on the Coal Price Issue and the Corn

---

18. *See* Pl. Mem. Show Cause, Exhibit B, at 1–11 (IRS examination documents substantiating filing date of November 10, 1992); *id.* at Exhibit D (Form 872 extending the limitations period under § 6511 to December 31, 1996, with respect to the filing of refund claims for, *inter alia*, the years 1981, 1982, and 1983.)

19. Such figures represent the purported status quo, so to speak, prior to the filing of Stelco's administrative refund claims for 1981, 1982, and 1983.

20. Such figures represent the increased carryovers alleged to arise from the grounds asserted by Stelco in its administrative refund claims for 1981, 1982, and 1983.

Products Issue, with the result that its NOLs for the years 1981–1983 would be substantially increased in the amounts reflected on the face of Stelco's administrative refund claims for those years, *supra,* those vastly enlarged NOLs would undoubtedly carry over *beyond* the taxable year 1991. Precisely *how far* such enlarged NOLs would carry beyond 1991, the court need not determine at this juncture, for that question goes to the merits, not to the jurisdictional predicate of adequate notice. As to the pending jurisdictional issue, we find, on this record, that Stelco has clearly shown that the IRS actually knew, or should have known, as early as April 6, 1994, that such enlarged NOL carryovers are, in fact, the "carryovers" later referenced in Stelco's Forms 1120X for the years 1984–1986, 1989–1991, and 1993–1995.

21. For the sake of completeness, the court notes Stelco's submission of what purports to be "a true and accurate copy of the Schedule to Form 870–AD which was prepared to attach to Form 870–AD in connection with the submission of tax years 1981–1983 of Stelco Holding Company to the Joint Committee." Pl. Brf.1984–95, Declaration of Robert E. Glaser, at 4, ¶ 17; *id.* at Exhibit E. Stelco asserts that this document contains "detail ... *sufficient to form the basis of jurisdiction.*" Plaintiff's Reply Memorandum Pursuant To July 23, 1998 Court Order, filed July 27, 1998, at 3. However, Stelco admits that such Form 870–AD "specifically provided that it was not to be construed as a claim for refund or credit, formal or informal." Pl. Brf.1984–95, at 7 n. 5. The Federal Circuit has held that a taxpayer cannot use a Form 870–AD containing such a disclaimer to establish that the Commissioner had adequate notice of the taxpayer's claim for refund. *Arch Engineering,* 783 F.2d at 192. Consistent with the foregoing, the court assigns no probative weight to the aforesaid "Schedule to Form 870–AD."

22. The court acknowledges, but assigns little significance to, the Government's semantic objections to the phrase "pending litigation for earlier tax years," contained within the explanatory reference in Stelco's Forms 1120X to "pending litigation for earlier tax years which may result in carryovers to this tax year." It is readily apparent that the term "earlier tax years," read in context, links the taxable years 1981–1983, from which Stelco's asserted entitlement to enlarged NOL carryovers arises, to the taxable years 1984–1986 and 1989–1995, for which Stelco seeks a refund of taxes as a result of such "carryovers."

As to the reference to "pending litigation," the Government fastidiously contends that the term "litigation" must be narrowly construed. Whereas Stelco filed its administrative refund

Against the foregoing background,[21] therefore, the Government's insistence that such Forms 1120X fail to give adequate notice of the claims asserted therein rings hollow. The Government would have this court view Stelco's Forms 1120X in sterile isolation, deprived of the underlying surrounding facts and circumstances from which such filings draw context and meaning. We must decline the Government's hospitable invitation to evaluate the adequacy of the notice furnished by Stelco's Forms 1120X as an abstract exercise in formalistic interpretation,[22] inasmuch as documents that are undeniably within the Commissioner's own files, *i.e.,* the reports of Agents Modica and Detweiler, *supra,* supply an abundance of probative evidence of *actual notice.*[23] Such evidence of actual notice on

claims in December of 1996, its complaint in case no. 97–168T was not filed until March of 1997. According to the Government, since the Coal Price Issue and the Corn Products Issue respecting the years 1981–1983 were not the subject of a formal lawsuit as of December of 1996, this means, *ipso facto,* that no "litigation" was "pending" as to those issues when Stelco filed its administrative claims for refund. We decline to unravel this conundrum, however, for adequate notice to the Commissioner does not demand the level of hypertechnical precision associated with communications among lawyers. In common usage, to "litigate" can mean "[t]o subject to or engage in legal proceedings." *Webster's II New College Dictionary* 640 (1995). Similarly, "litigation" can be taken to mean a "dispute." Barbara Ann Kipfer, *Roget's 21st Century Thesaurus* 517 (1992). On this record, Stelco has adequately shown that the Coal Price Issue and the Corn Products Issue were the subject of extensive administrative proceedings before the IRS and the Joint Committee on Taxation. It does not strain credulity to equate such administrative proceedings with "legal proceedings" or a "dispute."

23. We deem it especially noteworthy that throughout the pendency of this jurisdictional controversy, the Government has *never* overtly denied that it had *actual* notice of Stelco's claims. While it is undoubtedly the Government's prerogative to raise lack of notice on the part of the Commissioner as a jurisdictional defense in a tax refund suit, the Government may not neglect its corresponding duty to make reasonable inquiry in order to ascertain whether such a defense is well grounded in fact. RCFC 11. Where, as here, documentary evidence in the Government's possession conclusively establishes a jurisdictional fact in controversy, *i.e.,* notice to the Commissioner of a claim for refund,

the part of the Commissioner's agents conclusively establishes that Stelco's formal administrative refund claims for the years 1984–1986, 1989–1991, and 1993–1995, timely filed in December of 1996, satisfied the requirements of § 7422(a). *American Radiator,* 162 Ct.Cl. at 115–16, 318 F.2d at 920–21; *Wall Industries,* 10 Cl.Ct. at 99–102.

On this record, therefore, we hold that the Commissioner was put on adequate notice, prior to the expiration of the applicable limitations period(s) under § 6511(a), as to the following matters: (i) that Stelco sought to substantially increase its NOL carryovers arising from the taxable years 1981, 1982, and 1983; and (ii) that if Stelco's entitlement to such enlarged NOL carryovers were sustained, Stelco would become entitled to refunds of taxes overpaid with respect to most, if not all, of the taxable years 1984–1986, 1989–1991, and 1993–1995. Consequently, given all of the foregoing, we further hold that Stelco's Forms 1120X for the taxable years 1984–1986, 1989–1991, and 1993–1995, filed in December of 1996, were timely formal administrative refund claims satisfying the requirements of § 7422(a).

b. *Taxable Year 1992—Insufficient Proof Of An Informal Claim Satisfying The Requirements Of § 7422(a).*

 Having previously held, *supra,* that plaintiff has failed to establish the existence of a timely formal claim for refund for taxable year 1992, there is no denying that, upon a showing that its minimum requirements are met, the *informal* claim doctrine may be applied to cure Stelco's failure of proof for such year. *Kales,* 314 U.S. at 194, 62 S.Ct. 214; *American Radiator,* 162 Ct.Cl. at 116–17, 318 F.2d at 921; *Kidde,* 40 Fed.Cl. at 65. On this record, however, Stelco has failed to prove that it asserted an efficacious informal claim. The probative documentary record from which the existence of an informal claim might be gleaned makes absolutely no reference to the taxable year 1992,[24] nor

to an asserted sum certain respecting the refund sought for that year. This lack of specificity, left uncured, is fatal. The seminal Supreme Court decision concerning the taxpayer's obligation to make an administrative refund claim before filing suit expressly holds that an efficacious refund claim must state the amount sought. *Felt & Tarrant Mfg. Co.,* 283 U.S. at 272, 51 S.Ct. 376. *See also Earnest v. United States,* 33 Fed.Cl. 341 (1995) (to same effect); *Wall Industries, Inc. v. United States,* 10 Cl.Ct. at 98 (efficacious informal claim requires that the Commissioner is given notice, *inter alia,* that a claim for refund is being made "for a sum certain") (citing *Furst v. United States,* 230 Ct.Cl. at 381, 678 F.2d at 151; *Newton v. United States,* 143 Ct.Cl. at 299, 163 F.Supp. at 618).

 As to the identification of 1992 as the taxable year for which a refund is allegedly sought, this requirement has been construed rather strictly in cases involving refund claims based on NOL carryovers, *i.e.,* the basis of Stelco's 1992 claim for refund. *See Kuehn v. United States,* 202 Ct.Cl. 473, 480 F.2d 1319, 1321–22 (1973) (taxpayer's alleged entitlement to deduction for NOL carry forward from 1965 to 1968, erroneously asserted because NOLs must first be carried back, failed to put IRS on notice as to refund claims arising from the carryback of such NOL to the 1962 and 1963 taxable years); *Sun Chemical Corp. v. United States,* 218 Ct.Cl. 702, 1978 WL 4208 (1978) (per curiam) (taxpayer's refund claims for its taxable years 1960 and 1961, reflecting NOL carrybacks arising from the exclusion of income from a government contract, which had previously been erroneously included in its taxable income for the years 1963, 1964, and 1965, held not to constitute an informal refund claim for the 1965 taxable year). Thus, from Stelco's filing of timely, valid formal refund claims for 1981, 1982, and 1983, the taxable years from which the NOL carryovers in controversy are asserted to originate, and from Stelco's filing of timely, valid

---

counsel for the United States would be well advised to consider filing a stipulation or otherwise conceding the point, rather than remaining silent and needlessly prolonging the jurisdictional controversy at the court's expense.

24. Said documents consist of: (i) Agent Modica's Report Transmittal dated April 25, 1990; (ii) Stelco's formal refund claims (Forms 1120X) for the taxable years 1981, 1982, and 1983, filed November 10, 1992; and (iii) Agent Detweiler's examination report dated April 6, 1994.

formal refund claims for the taxable years 1984–1986, 1989–1991, and 1993–1995, to which the aforesaid NOLs are asserted to carry, we cannot infer an efficacious assertion of an informal refund claim respecting the taxable year 1992. As the Court of Claims explained in *Sun Chemical*, "[a] refund claim for a particular tax year, however, does not constitute a refund claim for a different tax year, even if the underlying legal and factual bases for the claims for the 2 years are the same." *Id.* at 704 (citing *Rosengarten v. United States*, 149 Ct.Cl. 287, 293–94, 181 F.Supp. 275, 278–79, *cert. denied*, 364 U.S. 822, 81 S.Ct. 60, 5 L.Ed.2d 53 (1960); *Union Pac. R.R. Co. v. United States*, 182 Ct.Cl. 103, 115, 389 F.2d 437, 446 (1968); *Brigham v. United States*, 200 Ct.Cl. 68, 83 n. 13, 470 F.2d 571, 579 n. 13 (1972), *cert. denied*, 414 U.S. 831, 94 S.Ct. 62, 38 L.Ed.2d 65 (1973)).

■ Nor can Stelco's untimely formal refund claim for the taxable year 1992 cure the lack of specificity in Stelco's putative informal claim for that year. To be sure, it is sometimes said that an untimely formal claim, "when treated as an embellishment to the [taxpayer's timely] informal claim, *relates back* to the date the informal claim was filed." *Wall Industries*, 10 Cl.Ct. at 105 (emphasis added) (citation omitted). *See also, e.g., Kales*, 314 U.S. at 194, 62 S.Ct. 214; *American Radiator*, 162 Ct.Cl. at 116–17, 318 F.2d at 921. Upon such "relation back," the untimely formal claim is said to "perfect" the prior informal claim. *See e.g., Cumberland Portland Cement Co. v. United States*, 122 Ct.Cl. 580, 593, 104 F.Supp. 1010, 1015 (1952); *Night Hawk Leasing Co. v. United States*, 84 Ct.Cl. 596, 602–04, 18 F.Supp. 938, 941 (1937); *Jones v. United States*, 78 Ct.Cl. 549, 557, 5 F.Supp. 146, 150 (1933).

Here at bar, however, it cannot be said that Stelco's untimely formal refund claim, for the taxable year 1992, merely "embellishes" an earlier, otherwise valid informal claim by correcting relatively minor irregularities and omissions. On the contrary, Stelco's untimely formal claim supplies *two indispensable elements*, formerly lacking, of an efficacious claim for refund for the taxable year 1992, *i.e.*, a sum certain respecting the refund sought and the identification of the taxable year in question. To permit Stelco's untimely formal claim to "relate back" for the purpose of curing such material omissions within Stelco's putative informal claim would, in this court's opinion, stretch the informal claim doctrine past its breaking point and result in a plain violation of the statute of limitations under § 6511(a).[25]

■ Moreover, "[a] refund claim, informal or formal, *cannot* be amended or perfected as a matter of right *after it has been denied or rejected, and after the period of limitation has expired*." *Newport Industries v. United States*, 104 Ct.Cl. 38, 44, 60 F.Supp. 229, 232 (1945) (emphasis added) (citing *Cuban–American Sugar Co., Inc. v. United States*, 89 Ct.Cl. 215, 224, 27 F.Supp. 307, 311 (1939); *Sugar Land Railway Co. v. United States*, 71 Ct.Cl. 628, 635, 48 F.2d 973, 976 (1931)). *See also Cumberland Portland Cement*, 122 Ct.Cl. at 590, 104 F.Supp. at 1013 (to same effect). In applying the aforementioned principle to the present case, we return to our finding, *supra*, that Agent Detweiler's Spread Sheet Analysis demonstrates that the IRS knew, or should have known, as early as April 6, 1994, that Stelco's asserted entitlement to enlarged NOL carryovers from its taxable years 1981–1983 are, in fact, the "carryovers" later referenced in Stelco's Forms 1120X for the years 1984–1986, 1989–1991, and 1993–1995. Inasmuch as 1991 and 1993, the years immediately preceding and immediately following 1992, are among the years to which Stelco's enlarged NOLs would allegedly carry, Agent Detweiler possessed information from which she could have inferred the potential assertion of a similar, yet informal, refund claim

**25.** Although we acknowledge, as we must, that the "relation back" of an untimely formal claim has a venerable heritage, *e.g., Kales*, 314 U.S. at 194, 62 S.Ct. 214; *American Radiator*, 162 Ct.Cl. at 116–17, 318 F.2d at 921, the notion that an otherwise inadequate informal claim can be perfected, *after the statute of limitations has expired,* by the filing of an untimely formal claim is difficult, if not impossible, to reconcile with the strict jurisdictional construction given § 6511(a) by recent decisions of the Supreme Court. *See Brockamp*, 519 U.S. 347, 117 S.Ct. at 851–52; *Dalm*, 494 U.S. at 608–10, 110 S.Ct. 1361.

respecting the 1992 taxable year. However, Agent Detweiler's report unequivocally rejects the substantive grounds in support of Stelco's asserted entitlement to enlarged NOL carryovers from the taxable years 1981–1983, *i.e.,* Stelco's contentions regarding the Coal Price Issue for the years 1981–1983 and the Corn Products Issue for the year 1983. Detweiler Report at 1 (statement that Stelco's 1981–1983 "claims are disallowed in full"); *id.* at 15–19 (narratives explaining disallowance of Stelco's contentions, in their entirety, respecting the Coal Price Issue and the Corn Products Issue). Thus, even assuming that the court were to hold, which we do not, that the probative documentary record in this case establishes that the Service was given adequate notice of a potential informal refund claim for the taxable year 1992, we would also be constrained to hold that the Service rejected such informal claim not later than April 6, 1994, the date of Agent Detweiler's examination report. Consequently, Stelco's putative informal refund claim for its taxable year 1992, having been rejected by the Commissioner prior to the expiration of the statute of limitations under § 6511(a), cannot now be perfected by Stelco's later filing of an untimely formal refund claim for such year. *Newport Industries,* 104 Ct.Cl. at 44, 60 F.Supp. at 232.

Based upon all of the foregoing, the court holds that Stelco has failed to prove that it made a timely *informal* refund claim respecting the taxable year 1992. Coupled with our finding, *supra,* that Stelco has also failed to establish that it made a timely *formal* refund claim respecting said taxable year, the court dismisses Stelco's complaint, with prejudice, insofar as it relates to the taxable year 1992, for lack of subject matter jurisdiction. We now turn to the Government's contention that Stelco's complaint, insofar as it relates to the taxable years 1984–1986, 1989–1991, and 1993–1995, was prematurely filed in this court on March 17, 1997, in violation of the six-month waiting period prescribed in § 6532(a)(1).

### 3. *Waiting Period Under § 6532(a)(1).*

██ Irrespective of our holding, *supra,* that *timely* formal refund claims have been filed with regard to the taxable years 1984–1986, 1989–1991, and 1993–1995, the Government now contends that this court nevertheless lacks jurisdiction over Stelco's refund claims for those years, on the grounds that the complaint, case no. 97–168T, in this court was prematurely filed on March 17, 1997, in violation of § 6532(a)(1), which provides that:

> *No suit ... under section 7422(a) for the recovery of any internal revenue tax ... shall be begun before the expiration of 6 months from the date of filing the claim* required under such section *unless the Secretary renders a decision thereon within that time,* nor after the expiration of 2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates.

§ 6532(a)(1) (emphasis added). It is undisputed that the Government has rendered no "decision," within the meaning of § 6532(a)(1), with respect to any of Stelco's timely filed administrative refund claims for the years 1984–1986, 1989–1991, and 1993–1995. Therefore, prior to filing subject complaint in this court, Stelco was statutorily required to wait, pursuant to § 6532(a)(1), not less than six months from the date(s) on which Stelco filed its administrative refund claims for the taxable years 1984–1986, 1989–1991, and 1993–1995 with the IRS.

Notwithstanding the aforesaid obligatory statutory waiting period, it is uncontested that Stelco filed its formal administrative refund claims (Forms 1120X) with the IRS in December of 1996, and then filed its complaint in this court *only three months later,* i.e., on March 17, 1997. Such circumstances compel the dismissal of Stelco's complaint, without prejudice, insofar as it relates to Stelco's claims for the taxable years 1984–1986, 1989–1991, and 1993–1995, as prematurely filed in violation of the six-month waiting period prescribed by § 6532(a)(1). *Lewis v. United States,* 208 Ct.Cl. 969, 972 (1975). *See also Ching v. United States,* 5 Cl.Ct. 376, 379–80 (1984); *Weiner v. United States,* 15 Cl.Ct. 43, 46 (1988); *Curry–Bey v. United States,* 95–2 USTC (CCH) ¶ 50,604, 1995 WL

735781 (Fed.Cl.1995); *Davis v. United States*, 97–2 USTC (CCH) ¶ 50,496, 1997 WL 367235 (Fed.Cl.1997).

In a futile attempt to evade the aforementioned authorities,[26] Stelco weakly urges that the court should "reserve ruling" on the jurisdictional issue arising under § 6532(a)(1) "until it has a clear picture of the facts." Plaintiff's Memorandum Re: Motion To Dismiss Per Court Order Dated July 6, 1998, filed July 15, 1998, at 3, 6–7. In support of its position, Stelco cites "judicial efficiency and ... well founded rules relating to decision of *nonessential issues*," and argues that the court should first reach and decide "the substantive [Corn Products] issue arising in 1983." *Id.* at 3, 7 (emphasis added). Having already addressed and rejected such specious arguments pursuant to the dismissal of Stelco's refund claims for the taxable years 1987 and 1988, *supra*, the court reiterates that Stelco's absurd characterization of this court's subject matter jurisdiction as a "nonessential" issue that can be circumvented by reaching the substantive merits of the case is utterly untenable. *Steel Company*, —— U.S. at ——, 118 S.Ct. at 1012. Moreover, the court already "has a clear picture of the facts," as Stelco so blandly puts it, so far as the simple operative facts pertinent to the six-month waiting period under § 6532(a)(1) are concerned.

Stelco's remaining contentions are even less meritorious than the foregoing and amount, in essence, to a plea for some form of equitable relief from the strictures of the six-month waiting period under § 6532(a)(1), which we deem is entitled to short shrift, at best.[27] Because the statute of limitations is no bar to Stelco's refiling of a petition respecting those years,[28] there is no compelling reason to consider the propriety of invoking equitable relief and to waive compliance with the six-month waiting period which Congress has so clearly and purposely prescribed.[29] *Serafin v. United States*, 91–1 USTC (CCH) ¶ 50,153 at 87,627, 1991 WL 64476 (E.D.Va. 1991). Finally, inasmuch as the court lacks subject matter jurisdiction over such prematurely filed claims, and the refiling of a suit respecting such claims is not barred by the two-year statute of limitations under § 6532(a)(1), Stelco's complaint in case no. 97–168T is dismissed *without* prejudice, pursuant to RCFC 12(b)(1), insofar as it relates to Stelco's refund claims for the taxable

---

**26.** *Lewis*, a decision of the former Court of Claims, is binding precedent not only for this court, but also the Federal Circuit, unless overruled by that court sitting *en banc*. *South Corp. v. United States*, 690 F.2d 1368 (Fed.Cir.1982). By orders dated July 6 and July 23, 1998, the court directed Stelco to provide pointed citations to obligatory authorities, if any, demonstrating that this court may exercise jurisdiction over a prematurely filed tax refund suit. However, Stelco has cited, and we have found, no authority contrary to *Lewis*.

**27.** *See RHI Holdings*, 142 F.3d at 1462 (holding that § 6532(a)(1) contains no implied equitable exception) (citing *Brockamp*, 519 U.S. 347, 117 S.Ct. at 850–52).

**28.** In addition to the six-month waiting period addressed herein, § 6532(a) also imposes a two-year statute of limitations upon the filing of a tax refund suit, which runs from the date on which the Secretary mails the taxpayer a notice of disallowance or, if the taxpayer waives notice of disallowance, from the date such waiver is filed. *See* §§ 6532(a)(1), (a)(3). Here at bar, it is undisputed that the Commissioner has taken no action with respect to Stelco's administrative refund claims, *i.e.*, issued a notice of disallowance pur-

suant to § 6532(a)(1), and further, nothing in the record suggests that Stelco waived such notice pursuant to § 6532(a)(3). Thus, the two-year statute of limitations under § 6532(a)(1) has not even commenced running with respect to Stelco's refund claims for the taxable years 1984–1986, 1989–1991, and 1993–1995.

**29.** Even if it were appropriate, such equitable relief is particularly inapposite where, as here, the taxpayer *consciously disregards* the statutory requirement in question. Stelco openly admits that it recognized the jurisdictional issue raised by § 6532(a)(1) prior to filing its complaint in this court. To excuse Stelco's knowing, voluntary noncompliance with the six-month waiting period would violate the ancient maxim that he who comes into equity must come with clean hands. *See Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 241, 245, 54 S.Ct. 146, 78 L.Ed. 293 (1933); *Atari Games Corp. v. Nintendo of America Inc.*, 975 F.2d 832, 846 (Fed. Cir.1992). We note also that a mere six-month waiting period, of which but roughly three months remained by the time Stelco filed its complaint, is by no means an onerous burden. On this record, the consequences of Stelco's impatience must fall not upon the Government, nor upon this court, but solely upon Stelco.

years 1984, 1985, 1986, 1989, 1990, 1991, 1993, 1994, and 1995.

### D. Scope Of Issues Remaining For Decision.

Given our multiple jurisdictional rulings, *supra*, the court deems it prudent to clarify the scope of the issues remaining for decision in case no. 97–168T. At this juncture, we exercise jurisdiction only over Stelco's refund claim for the taxable year 1981. Pursuant thereto, the court has jurisdiction to decide only the substantive Coal Price Issue as it relates to the taxable year 1981. Inasmuch as subject matter jurisdiction over the taxable years 1982 and 1983 is lacking, we have no power to decide the Coal Price Issue as it relates to the taxable years 1982 and 1983, nor the Corn Products Issue as it relates to the taxable year 1983, nor; the effect of the resolution of those substantive issues upon any carryback or carryover years.

Stelco strenuously contends, nonetheless, that the court may reach and decide the substantive merits of the Corn Products Issue arising in the dismissed year 1983 because, if the Corn Products Issue were decided in Stelco's favor, the resultant increased NOL carryback from 1983 to 1981 would cause Stelco to be entitled to a refund of taxes overpaid for the taxable year 1981, a year over which we have jurisdiction. By necessary implication, Stelco's theory also presumes that a ruling in its favor on the Coal Price Issue arising in 1983 would further increase the amount of the aforesaid 1983 NOL carryback, and that a ruling in its favor on the Coal Price Issue arising in 1982 would also give rise to an NOL carryback from 1982 to the 1981 taxable year. Such events would, in Stelco's view, create jurisdiction over the Coal Price Issue for the years 1982 and 1983. On this record, we conclude that Stelco's theory simply strains credulity and is meritless.

Stelco's administrative refund claim (Form 1120X) for the taxable year 1981, filed November 10, 1992, expressly identifies four substantive grounds for recovery, each of which rests upon operative facts arising only during 1981. The word "carryback" *does not* appear in said Form 1120X, and this filing gives no other indication that the refund claimed therein is premised upon a carryback of an NOL arising in *any* post–1981 taxable year, let alone an NOL arising in the taxable years 1982 or 1983. Thus, the court is unable to reach the conclusion that Stelco's Form 1120X for the taxable year 1981 furnished adequate notice, or *any* notice whatsoever, to the Commissioner respecting purported NOL carrybacks from the years 1982 or 1983 to the year 1981.

Agent Detweiler's Spread Sheet Analysis, *supra*, which sets forth detailed NOL carryover computations spanning the taxable years 1981 through 1991, inclusive, provides further confirmation that the Commissioner was *not* put on notice that Stelco's 1981 refund claim was supposedly premised upon NOL carrybacks from 1982 or 1983. Irrespective of whether Stelco were to prevail as to the Corn Products Issue for 1983, or the Coal Price Issue as to 1982 and 1983, and thereby become entitled to increase its NOLs from those years, the Spread Sheet Analysis clearly demonstrates Agent Detweiler's conclusion that a carryback of Stelco's previously existing 1982 and 1983 NOLs would have had no effect upon Stelco's 1981 tax liability. This is so because, as explicated herein, *supra*, Stelco had already incurred a substantial NOL during its taxable year 1981. Consistent with this view, the Spread Sheet Analysis indicates that Stelco's previously existing 1982 and 1983 NOLs consequently carry *forward* and are absorbed in the taxable years 1985 and 1986. Assuming that Stelco were to prevail as to the Corn Products Issue and Coal Price Issue respecting the taxable years 1982 and 1983, there is utterly no reason to believe that the resulting enlarged NOLs from those years would carry *back* and cause Stelco to become entitled to a refund of taxes overpaid in 1981.

As the party invoking this court's jurisdiction, Stelco has the burden of proving the indispensable jurisdictional facts by a preponderance of the evidence. *Reynolds*, 846 F.2d at 748. Stelco has failed to establish that the Commissioner was given adequate notice that Stelco was asserting NOL carrybacks from the taxable years 1982 and 1983 as a ground for the recovery of taxes alleged-

ly overpaid for 1981. Lacking credible evidence that such notice was given, the court has no jurisdiction to reach and decide the Corn Products Issue arising in the taxable year 1983, nor the Coal Price Issue as it relates to the taxable years 1982 and 1983. *Felt & Tarrant Mfg. Co.*, 283 U.S. at 272, 51 S.Ct. 376.

## CONCLUSION

Based upon the foregoing, the court makes the following rulings and directives with respect to case no. 97–168T:

1. Plaintiff's claims for the taxable years 1982, 1983, 1987, 1988, and 1992 are hereby dismissed *with prejudice* for lack of subject matter jurisdiction, in accordance with RCFC 12(b)(1) and 12(h)(3). Pursuant thereto, defendant's pending motions to dismiss, filed June 3, 1998, respecting the foregoing taxable years inconsistent with the aforesaid rulings, are hereby DENIED as moot;

2. Defendant's motion, filed June 3, 1998, to dismiss *without prejudice* plaintiff's claims for the taxable years 1984 through 1995, inclusive, for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), is hereby GRANTED as to plaintiff's claims for the taxable years 1984, 1985, 1986, 1989, 1990, 1991, 1993, 1994, and 1995, but is DENIED as moot with respect to plaintiff's claims for the taxable years 1987, 1988, and 1992;

3. Respecting plaintiff's complaint, filed March 17, 1997, all pleadings related to the Corn Products Issue allegedly arising in the taxable year 1983, *supra*, and to the Coal Price Issue, *supra*, as such issue relates to the taxable years 1982 and 1983, shall be deemed stricken;

4. Defendant's motion, filed June 3, 1998, and plaintiff's cross-motion, filed June 24, 1998, for summary judgment pursuant to RCFC 56, are both hereby DENIED, without prejudice, as moot;

5. There being no just reason for delay, the Clerk is hereby directed to enter judgment pursuant to RCFC 54(b) dismissing the complaint in case no. 97–168T *with prejudice* insofar as it relates to plaintiff's claims for the taxable years 1982, 1983, 1987, 1988,

and 1992, and *without prejudice* insofar as it relates to plaintiff's claims for the taxable years 1984, 1985, 1986, 1989, 1990, 1991, 1993, 1994, and 1995; and

6. The parties shall confer and prepare a *joint status report* informing the court of their expectations and intentions respecting a negotiated settlement of the Coal Price Issue as it relates to the taxable year 1981, and shall file same with this court within fourteen (14) days from the date of this opinion, *i.e.*, on or before October 13, 1998.

IT IS SO ORDERED.